1  JEFFREY L. HOGUE, ESQ. (SBN 234557)
   TYLER J. BELONG, ESQ. (SBN 234543)
2  BRYCE A. DODDS, ESQ. (SBN 283491)
   **HOGUE & BELONG**
3  430 Nutmeg Street, Second Floor
   San Diego, CA 92103
4  Telephone No:  (619) 238-4720
   Facsimile No:   (619) 270-9856
5

6

7

8                    **UNITED STATES DISCTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                         **SAN JOSE DIVISION**

11  Brad Greenspan, on behalf of himself and all       )
    others similarly situated,                         )   CASE NO.:
12                                                      )
                   vs.                                 )   **ANTITRUST CLASS ACTION**
13                                                      )   **COMPLAINT**
                                                       )
14  IAC/InterActiveCorp, a Delaware corporation;       )
15  Google, Inc., a Delaware corporation; News         )   DEMAND FOR JURY TRIAL
    Corp, a Delaware corporation; Geoff Yang,          )
16  individually, and David Carlick, individually.     )
                                                       )
17             Defendants.                             )
                                                       )
18                                                      )
                                                       )
19  _____         )

20

21

22

23

24

25

26

27

28

_____
                    ANTITRUST CLASS ACTION COMPLAINT

Plaintiff Brad Greenspan, individually and on behalf of all others similarly situated, ("Plaintiff") alleges the following:

## I.      INTRODUCTION

1.   This class action is brought by Plaintiff, on behalf of himself and all others similarly situated (collectively, "Plaintiff Classes"), who have sustained injuries or damages arising out of Defendants' (defined below) violations of the antitrust and unfair competition laws of the United States and the State of California.

2.   Plaintiff petitions this Court to allow him to represent and prosecute claims against Defendants in this class action proceeding on behalf of all those similarly situated who are residents of the State of California.

3.   This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION

4.   This Court has subject matter jurisdiction over this action under 15 U.S.C. sections 4 and 16, and 28 U.S.C. sections 1331 and 1337.

5.   This Court has personal jurisdiction over Defendants because each resides in or has its principal place of business in the state of California, employed individuals in this state during the Class Period, and has had substantial contacts within the state of California in furtherance of the injuries and conspiracy described herein.

6.   Venue is proper in this judicial district under 15 U.S.C. section 22 and 28 U.S.C. section 1391(b)(1)-(2) because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this judicial district, a substantial portion of the affected interstate trade and commerce was carried out in this district, and multiple defendants reside in this district.

## INTRADISTRICT ASSIGNMENT

7.   Under Civil Local Rule 3-2(c) and (e), assignment of this case to the San Jose Division of the United States District Court for the Northern District of California is proper because a substantial part of the events and omissions which give rise to Plaintiff's antitrust claims occurred within the county of San Jose.

ANTITRUST CLASS ACTION COMPLAINT

1

**PARTIES**

2    8.  Plaintiff, Brad Greenspan, an individual, is a former employee and shareholder of

3  Intermix, Inc. ("Intermix").

4    9.  Defendant IAC/InterActive Corp. ("IAC") is a Delaware corporation with its principal

5  place of business located at 555 West 18th Street, New York, New York 10011.  IAC owns

6  several different websites, including Ask.com, formerly known as AskJeeves.com.  Ask.com's

7  principal place of business is located at 555 12th Street, Oakland, California.

8    10. Defendant Google, Inc. ("Google") is a Delaware corporation with its principal place of

9  business located at 1600 Amphitheatre Parkway, Mountain View, California.

10    11. Defendant News Corporation ("News Corp") is a Delaware corporation with its

11  principal place of business located at 1211 Avenue of the Americas, New York, New York.

12    12. Defendant Geoff Yang, an individual, was at all relevant times a shareholder and a

13  member of the board of directors for Ask Jeeves as well as MySpace, Inc.

14    13. Defendant David Carlick, an individual, was at all relevant times a shareholder and a

15  member of the board of directors for Ask Jeeves as well as MySpace, Inc.

16

17

**FACTUAL BACKGROUND**

18    14. Plaintiff was an employee, and owned 10 percent of common stock in Intermix, Inc.

19  ("Intermix"), formerly known as eUniverse, Inc.

20    15. Intermix owned MySpace, Inc. ("MySpace"), which at all relevant times, was a social

21  media website founded in approximately 2003 that owned the website www.myspace.com.

22  MySpace was a privately held company controlled by Intermix, until Intermix, along with its

23  crown jewel, MySpace, was sold to News Corp.

24    16. Plaintiff oversaw and managed MySpace, as well as the founders Chris Dewolfe and Tom

25  Anderson until News Corp acquired MySpace in July 2005.

26  ///

27  ///

28  ///

-2-

17. Defendant Ask Jeeves, a California corporation ("Ask Jeeves") was a question-answering-focused web search engine (www.AskJeeves.com)[1] founded in 1995 by Garrett Gruener and David Warthen.  Sometime in 2006, IAC acquired Ask.com.

18. In or about June 2003, Yahoo! Inc. ("Yahoo"), a Delaware corporation and owner of www.yahoo.com, entered into to a contract with MySpace to serve as MySpace's search engine ("Yahoo Contract").  The Yahoo Contract ended on or about June 2005, before the News Corp acquisition of MySpace.  Search engine contracts are lucrative and desired by search engine companies such as Yahoo or Google, because they provide these search engine companies significant increases in the number of searches performed or "traffic", which in turn increases the search engine company's revenue and value.  Therefore, search engine companies will often pay significant sums for exclusive search engine rights to popular websites such as MySpace that are or were frequently used by the public in order to route traffic, and therefore revenue and value, to their search engines.

19. When the Yahoo Contract with MySpace ended in June 2005, the Board of Directors of MySpace, led by Yang and Carlick, declined to renew it.  Without the Yahoo Contract, MySpace was without a search engine partner, and without the revenue that comes with such partnership.  A company called Revenue Science filled the void and became MySpace's interim search engine provider.  Revenue Science secretly filtered traffic through AOL and Ask.com so those companies would have an artificial spike in search traffic.  This, in turn, increased the value of AOL and Ask.com because investors attributed the increase in search traffic as organic.

20. During this time frame, Google did not make a bid to be the exclusive search engine for MySpace when the Yahoo Contract ended.  Google did not engage MySpace for these rights because it had secretly come to an agreement with Ask.com not to make the bid until MySpace was acquired by News Corp.  In exchange, Ask.com entered into an illegal anti-poaching agreement with Google, whereby Ask.com agreed not to solicit any of Google's executives, or

---

[1] www.AskJeeves.com later became www.ask.com. Ask.com still maintains and operates a web-based search engine. Collectively, Ask Jeeves, www.AskJeeves.com, and www.ask.com shall be referred to as Ask.com.

ANTITRUST CLASS ACTION COMPLAINT

anyone higher than a junior level employee, and vice versa.  Because of Ask.com's and Google's

unlawful agreement not to compete with each other in attracting and hiring employees, Google

agreed in advance, at Carlick and Yang's direction, not to make a bid to become the search engine

for MySpace until it was sold to News Corp.  This arrangement benefited defendants Carlick,

Yang, Ask.com, Google, and News Corp.  It benefited Yang and Carlick because they secretly

routed search traffic through Ask.com, which ultimately led them to sell Ask.com at an

astronomical price to IAC.  It benefited Google because Yang and Carlick did not renew the

Yahoo Contract, leaving Google as the only viable remaining competitor.  Finally, it benefited

News Corp because it was able to purchase MySpace at a substantial discount.

21. At all relevant times, News Corp shared a common director with the single largest

shareholder in Google.  News Corp was able to purchase MySpace at a severe discount by

purchasing MySpace during a time when (i) Google was withholding a bid for exclusive search

engine contract, and when (ii) Yang and Carlick directed MySpace not to renew an exclusive

search engine contract with Yahoo or any other search engine in exchange for Google's agreement

not to poach Ask.com's employees.  News Corp knew about the secret bid-rigging agreement

between Ask.com and Google because Thomas Perkins was simultaneously a director of News

Corp and Google's single largest shareholder during the relevant time period.

22. News Corp  also knew about the bid-rigging scheme because it was informed of it by

Richard Rosenblatt, the CEO of Intermix (owner of MySpace) at the time, in exchange for News

Corp's offering Rosenblatt an officer position at News Corp.  Rosenblatt not only informed News

Corp about the bid-rigging scheme, but also further aided News Corp in assuring News Corp's

purchase of Intermix/MySpace at a severe discount by warding-off offers to purchase

Intermix/MySpace from competing media company bidders.  For example, after receiving the

offer to become an officer of News Corp, Rosenblatt intentionally delayed in responding to a

purchase offer from Viacom during the same time News Corp was preparing to make a bid.  In

emails sent by Rosenblatt to News Corp during this time frame, he tells News Corp such things as:

- "I would like to discuss my specific role and structure whenever you are ready.  It is no rush unless Peter and Rupert [Murdoch] want me to sign an employment agreement by Sunday. . . ."

- I am burning some real equity with every major media company by getting [the deal] done . . . better have a good job for me cause I ain't gonna work in this town again. . . ."

- Tell Thom Murdoch and I cut the deal in 30 mins and I got 100% of what we wanted. Deal closing by Monday."

Likewise, at that same timeframe, Rosenblatt received an email from Montgomery & Co., LLC, the investment banker firm handling the potential sale to News Corp, telling Rosenblatt, "Viacom coming in hard. . . You need to dance with Viacom. Slow them down. I know you can do it."

23. Ask.com was also incentivized by the illegal bid rigging scheme described above. In furtherance of the bid-rigging agreement, Ask.com secretly arranged for an interim search provider, Revenue Science, to perform the search engine function for MySpace, thereby routing search traffic to Ask.com. This arrangement permitted Ask.com to secretly and substantially increase the volume of searches and the value of its website prior to the sale of Ask.com to IAC.

24. In July 2005, while Ask.com was performing the search engine function for MySpace, Ask.com was acquired by IAC for approximately $1.85 billion. Yang and Carlick, major shareholders of Ask.com, made millions upon the acquisition by IAC.

25. Meanwhile, MySpace continued to operate without any search engine contract from Ask.com, Google, Yahoo!, or any other search engine; and, therefore was without any revenue from a search engine contract. Even though it was without a search engine contract and revenue, in July 2005, Yang and Carlick made the decision to cause the sale of MySpace to News Corp. In 2005 News Corp acquired MySpace for $580 million, a pittance compared to what MySpace would have sold for had MySpace received revenue from an exclusive search engine contract. Had Google been MySpace's exclusive search engine partner at the time of News Corp.'s acquisition, MySpace would be worth approximately $32 billion. But, Google intentionally stayed out of the bid during that time because, as stated, Google's anti-poach/bid-rigging scheme with Ask.com caused Google to wait on bidding for the exclusive search engine contract with MySpace until after MySpace was sold to News Corp—a company who shared a director with Google's largest shareholder.

ANTITRUST CLASS ACTION COMPLAINT

26. As soon as News Corp purchased MySpace at a discount and controlled MySpace, Google was able to secure the exclusive search engine contract with MySpace at a discount. Indeed, after MySpace was acquired by News Corp, in August 2006, Google successfully bid on the contract to be the exclusive search engine for MySpace for $900 million in guaranteed payments through 2010. Had Google made such a bid a year prior, when MySpace was being acquired by News Corp, the acquisition price would have been far greater.

27. At the time of News Corp's acquisition of MySpace, Plaintiff owned approximately 10% of the shares of MySpace. Plaintiff lost millions of dollars during the sale to News Corp.

28. The Antitrust Division of the United States Department of Justice (the "DOJ") investigated several companies, including defendant Google, and their mutual conspiracy to not poach one another's employees. The DOJ examined Google's non-solicitation agreement with several technology companies, including Ask.com, and found that its agreement was "facially anticompetitive" and violated the Sherman Act *per se*. According to the DOJ, Google's agreement "eliminated significant forms of competition" and, substantially diminished competition to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities." The DOJ concluded that the agreement "disrupted the normal price-setting mechanisms that apply in the labor setting." Defendant Google signed a settlement enjoining it from making such non-solicitation agreements again.

29. These agreements unreasonably restrained trade in violation of the Sherman Act, 15 U.S.C. section 1, and the Cartwright Act, Cal. Bus. & Prof. Code sections 16720 *et seq.*, and constituted unfair competition and unfair practices in violation of California's Unfair Competition Law, California Business & Professions Code sections 17200, *et seq.* These agreements resulted in Google refusing to competitively seek any exclusive search contract with MySpace once the Yahoo Contract expired, and resulted in Yang and Carlick causing MySpace not to renew an exclusive search engine relationship with Yahoo all to the detriment of the shareholders of Intermix/MySpace.

30. Plaintiff, on his own behalf and on behalf of the class defined herein, seeks to recover the difference between the price that News Corp acquired MySpace with Ask.com effectively acting as the search engine for MySpace, and the value MySpace would have been worth at that same time had Google not agreed to forego bidding on an exclusive search engine contract with MySpace.

## **THE CONSPIRACY**

Defendants conspired not to actively solicit each other's employees and to fix their employees' wage and salary ranges as part of one overarching conspiracy to suppress the compensation and rig the competitive process such that MySpace was devalued at the time of its acquisition by News Corp. Defendants Google and Ask.com agreed that Google would not bid on becoming the search engine provider for MySpace while Ask.com was effectively providing those services just prior to being acquired by IAC. Likewise, the directors of Ask.com, Yang and Carlick, agreed that MySpace would continue to forego obtaining an exclusive search engine agreement with any other company, including Yahoo, until after MySpace was sold to News Corp. This agreement benefited Google because its single largest non-employee investor, Kleiner, Perkins, Caufield & Byers ("KPCB"), is also News Corp's single largest non-employee investor, and owner of KPCB, Thomas Perkins, was an outside director for News Corp since approximately 2004. Therefore, rather than pay MySpace for an exclusive search engine contract, Google waited for Yang and Carlick to deliver the undervalued MySpace to News Corp, who was mutually owned in large part by KPCB, and then, on August 7, 2006, paid News Corp the $900 million for an exclusive search engine contract.

This agreement between Ask.com and Google unlawfully benefited each defendant greatly, while simultaneously injuring MySpace and its shareholders, and Ask.com's employees' wages.

///

///

///

///

ANTITRUST CLASS ACTION COMPLAINT

1

**INTERSTATE COMMERCE**

2    31. Defendants' conduct substantially affected interstate commerce throughout the United

3    States and caused antitrust injury throughout the United States because, among other things,

4    defendants' had employees across state lines as well as did business over state lines.

5

**CLASS ALLEGATIONS**

6    32. Plaintiff sues on his own behalf and, pursuant to Federal Rule of Civil Procedure 23 on

7    behalf of the following Plaintiff Classes:

8        All shareholders of Intermix at the time of its acquisition by News Corp.
Excluded from the Class are the claims against News Corp released in *Brown v.*
9        *Brewer et al.,* No. 2:06-cv-03731-GHK-SH ("Intermix Class"); and

10        All persons who worked at any time from 2004 to the present for
IAC/InterActiveCorp in the United States in technical, artistic, creative, research
11        and development positions, and or as officers, directors, and or senior executives.
Excluded from the Class are all claims against Google *In re High-Tech*
12        *Employees Antitrust Litigation,* No. 11-cv-2509 (N.D. Cal.) ("Employee
Class").

13

14    33. The Plaintiff Classes contains thousands of members, as each Defendant employed

15    hundreds or thousands of class members each year. The class is so numerous that individual

16    joinder of all members is impracticable.

17    34. The Plaintiff Classes are ascertainable either from Defendants' records or

18    through self-identification in a claims process.

19    35. Plaintiff's claims are typical of the claims of other class members as they arise out

20    of the same course of conduct and the same legal theories, and he challenges Defendants'

21    conduct with respect to the Plaintiff Classes as a whole.

22    36. Plaintiff has retained able and experienced class action litigators as his counsel. He has

23    no conflicts with other class members and will fairly and adequately protect the interests of

24    Plaintiff Classes.

25    37. This case raises common questions of law and fact that are capable of class-wide

26    resolution, including:

27        a. whether Defendants agreed not to actively solicit each other's employees, to
notify other Defendants of offers made to their employees, and to limit
28        counteroffers;

ANTITRUST CLASS ACTION COMPLAINT

b.  whether Defendant agreed to rig the bidding process for the search engine rights to MySpace;

c.  whether such agreement was a per se violation of the Sherman Act and or Cartwright Act;

d.  whether Defendants' agreements constituted unlawful or unfair business acts or practices in violation of California Business and Professions Code section 17220;

e.  whether Defendants fraudulently concealed their conduct;

f.  whether Plaintiff and the other class members suffered injury as a result of Defendants' agreement;

g.  whether any such injury constitutes antitrust injury; and

h.  the measure of damages suffered by Plaintiff and the Class.

38. These common questions predominate over any questions affecting only individual class members.

39. A class action is superior to any other form of resolving this litigation. Separate actions by individual class members would be enormously inefficient and would create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendants and substantially impede or impair the ability of class members to pursue their claims. There will be no material difficulty in the management of this action as a class action.

## STATUTE OF LIMITATIONS

### Continuing Violation

40. Defendants' conspiracy was a continuing violation through which Defendants repeatedly invaded Plaintiff's and the Plaintiff Classes' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

41. Defendants communicated among themselves by phone and e-mail and through in-person meetings to further the conspiracy as described in this Complaint.

### Fraudulent Concealment

42. Before May 17, 2013, at the earliest, Plaintiff did not have actual or constructive notice, and was not on inquiry notice of certain facts wherein he discovered he has certain claims and can

seek certain relief.  Further, Plaintiff and the plaintiff class could not have discovered an anti-poach agreement between Google and Ask.com that served as Google's motivation to agree not to place a bid to become a search engine partner with MySpace.  This anti-poach agreement has been deemed *per se* unlawful by the United States Department of Justice.  It had not been revealed that Google and Ask.com entered into an anti-poach agreement before May 17, 2013.

43. Defendants engaged in a secret conspiracy wherein Google would not make an offer to be MySpace's exclusive search engine until Ask.com was sold to IAC.

44. In exchange, Ask.com agreed to enter into an anti-poach agreement with Google.  This caused the value of MySpace to be severely devalued when sold to News Corp because it was not generating revenue from any search engine.  Furthermore, during the time when Revenue Science was redirecting MySpace's search traffic to Ask.com, it artificially and covertly increased the value of Ask.com tremendously such that it was overvalued when sold to IAC.  Two directors, Yang and Carlick, sat on the boards of both MySpace and Ask.com and orchestrated the conspiracy.

45. Defendants provided pretextual, incomplete or materially false and misleading explanations for hiring, recruiting, and compensation decisions made pursuant to the conspiracy. Defendants' explanations for their conduct served only to cover up Defendants' conspiracy.

46. Defendants have attempted to create the false impression that their decisions are independent and that they were acting in accordance with the antitrust laws.

47. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to the claims that Plaintiff and the Class members have as a result of the anticompetitive and unlawful conduct alleged herein.

### **FIRST CAUSE OF ACTION**

#### **(Violation of the Sherman Act)**

48. Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

49. Defendants, by and through their officers, directors, employees, agents, or other representatives, have entered into an unlawful agreement, combination, and conspiracy in restraint

ANTITRUST CLASS ACTION COMPLAINT

of trade and bid-rigging, in violation of 15 U.S.C. section 1.  Specifically, Defendants agreed in advance that Ask.com would submit the winning bid on a contract being let through the competitive bidding process and restricted competition for class members' services through non-solicitation agreements and agreements to fix the wage and salary ranges for class members, all with the purpose and effect of suppressing class members' compensation and restraining competition in the market for class members' services.

50. Defendants' conduct injured class members by lowering the value of MySpace upon its acquisition by News Corp.

51. Defendants' agreements are *per se* violations of the Sherman Act.

52. As a result of the above violations, Plaintiff and the Plaintiff Classes have been damaged in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Violation of the Cartwright Act)

53. Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

54. Defendants, by and through their officers, directors, employees, agents or other representatives, have entered into an unlawful agreement, combination and conspiracy in restraint of trade, in violation of California Business and Professions Code section 16720.

55. Defendant Google entered into an agreement with Ask.com to not place an offer to become MySpace's exclusive search engine, thereby implicitly forcing Ask.com to fill this void.

56. Defendants' conduct injured Plaintiff and other members of the Plaintiff class, by not maximizing the value of MySpace upon its sale to News Corp.

57. Plaintiff and other class members are "persons" within the meaning of the Cartwright Act as defined in California Business and Professions Code section 16702.

58. Defendants' agreements are *per se* violations of the Cartwright Act, and their conduct violates the Cartwright Act.

59. As a result of the above violations, Plaintiff and the Plaintiff Classes have been damaged in an amount according to proof.

ANTITRUST CLASS ACTION COMPLAINT

**THIRD CAUSE OF ACTION**

**(Violation of the Clayton Act as against IAC, Yang, and Carlick)**

60. Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

61. Section 8 of the Clayton Act restricts interlocking officers or directorates, prohibiting the same person from serving simultaneously as an officer or on the boards of corporations that compete with one another. (15 U.S.C. §§ 19(a)(1), (2).)  Clayton Act Section 8 does not inquire into whether the interlock adversely affects competition; rather, if two corporations meet the size requirements, are competitors, and share an officer or a board member, Section 8 of the Clayton Act is violated. (*Id.*)  Defendants are "persons" within the meaning of the Clayton Act.

62. MySpace was on pace to generate 70%+ of its revenue from Paid Search in 2006, and Ask.com (then labeled, Ask Jeeves) generated 100% of its revenue from online Paid Search in 2006.  At all relevant times, Ask.com was a 100% focused online search company, and is owned by IAC.   At all relevant times, Yang and Carlick each served simultaneously as directors of MySpace and Ask.com.  Based on the Section 8 rules, Yang and Carlick each had one year ending sometime in May 2005 to resign from one of the two boards.  Yang and Carlick failed to comply.

63. This violation of the Clayton Act resulted in acts by directors Yang and Carlick that benefited Ask.com, while simultaneously disadvantaging MySpace.  Based on evidence recently disclosed in 2013, Plaintiff now knows that Google and Ask.com had a very close strategic working partnership over many years, beginning as early as 2005.  Specifically, the newly discovered evidence reveals that Ask.com—through its directors Yang and Carlick—entered into an unlawful anti-poaching agreement and bid-rigging arrangement with Google that caused Google not to bid on an exclusive search engine contract with MySpace, and incentivized directors Yang and Carlick to cause MySpace not to seek any exclusive search engine contract, all to MySpace's detriment.  Rather than cause MySpace to engage in a new exclusive search engine contract with Google, or another search engine provider, Yang and Carlick caused MySpace to refrain from doing so in 2005, thus permitting both Ask.com and AOL, through Revenue Science,

ANTITRUST CLASS ACTION COMPLAINT

1    to divert search engine traffic from MySpace users, which increased traffic and search volume to

2    Ask.com. This increased search volume increased Ask.com's revenue and value, while

3    simultaneously minimizing MySpace's revenue and value.

4    64. These omissions and the damages from the lost value of MySpace searches were caused

5    by the interlocking directors, Yang and Carlick, who simultaneously served as directors to

6    Ask.com and MySpace. Yang and Carlick willfully violated Section 8 of the Clayton Act.

7    65. As a result of the above violations, Plaintiff and the Class have been damaged in an

8    amount according to proof.

9    **FOURTH CAUSE OF ACTION**

10    **(Unfair Competition)**

11    66. Plaintiffs incorporate by reference the allegations set forth above.

12    67. Defendants' efforts to manipulate the value of MySpace by Google, agreeing in advance

13    not to make an offer and stay out of the running to be MySpace's exclusive search engine,

14    severely depressed the sale of MySpace to News Corp.

15    68. Google and News Corp shared a common major stakeholder, KPCB, who was also part

16    of the conspiracy.

17    69. Defendants' acts were unfair, unlawful, and or unconscionable, both in their own right and

18    because they violated the Sherman Act and the Cartwright Act.

19    70. Defendants' conduct injured Plaintiff and other members of the class by devaluing the

20    price of their stock upon the sale of MySpace to News Corp. Plaintiffs and other class members

21    are therefore persons who have suffered injury in fact and lost money or property as a result of the

22    unfair competition under California Business and Professions Code section 17204.

23    71. Under California Business and Professions Code section 17203, disgorgement of

24    Defendants' unlawful gains is necessary to prevent the use or employment of Defendants' unfair

25    practices and restitution to Plaintiff and other class members is necessary to restore to them the

26    money or property unfairly withheld from them.

27    72. As a result of the above unlawful acts, Plaintiff and Plaintiff Classes have been damaged

28    in an amount according to proof.

ANTITRUST CLASS ACTION COMPLAINT

1

## **PRAYER FOR RELIEF**

2       Plaintiff, on behalf of himself individually and on behalf of Plaintiff Classes prays for

3 relief and judgment against Defendants, jointly and severally as follows:

4
  1. that the Court determine that this action may be maintained as a class action;

5
  2. Appointment of Plaintiff Brad Greenspan as Class Representative and his
6     counsel of record as Class Counsel;

7
  3. Pre-judgment and post-judgment interest as provided by law or allowed in
     equity;
8
  4. An incentive award to compensate Plaintiff Brad Greenspan for his efforts in
9     pursuit of this litigation;

10
  5. For nominal damages;

11
  6. For compensatory damages;

12
  7. For restitution of all monies due to Plaintiff, Plaintiff Class, and Plaintiff
     Subclasses, and disgorged profits from the unlawful business practices of
13    Defendants;

14
  8. For costs of suit and expenses incurred herein;

15
  9. For reasonable attorneys' fees;

16
  10. For treble damages; and

17
  11. For all such other and further relief the Court may deem just and proper.

18

19               **JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

20       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by

21 jury on all issues so triable.

22

23 Dated:  September 16, 2014                 **HOGUE & BELONG**

24

25                                          *s/ Tyler J. Belong*
                                           _____
26                                          JEFFREY L. HOGUE
                                           TYLER J. BELONG
27                                          BRYCE A. DODDS
                                           Attorney for Plaintiff and on behalf of those
28                                          similarly situated

-14-