1  KURT A. KAPPES (SBN 146384)
   GREENBERG TRAURIG, LLP
2  1201 K Street, Suite 1100
   Sacramento, CA 95814-3938
3  Telephone: (916) 442-1111
   Facsimile: (916) 448-1709
4  kappesk@gtlaw.com

5
   Attorneys for Defendant
6  IAC/InterActive Corp

7  Additional Counsel Listed on Signature Page

8

9                     UNITED STATES DISTRICT COURT

10            FOR THE NOTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13  Brad Greenspan, on behalf of himself and all    ) CASE NO.  5:14-cv-04187-RMW
    others similarly situated,                       )
14                                                    )
              Plaintiff,                              ) **DEFENDANT IAC/INTERACTIVE CORP'S**
15                                                    ) **MOTION TO DISMISS FOR FAILURE TO**
    v.                                                ) **STATE A CLAIM**
16                                                    )
    IAC/InterActive Corp, a Delaware corporation;    )
17  Google, Inc. a Delaware corporation; News        ) Date: March 20, 2015
    Corp, a Delaware corporation;                     ) Time: 9:00 am
18                                                    ) Place: Courtroom 6, 4th Floor
              Defendants.                             ) Judge: Honorable Ronald M. Whyte
19  _____ )

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................3

STATEMENT OF FACTS ..................................................................................................4

 A. Plaintiff's Prior Litigation Efforts............................................................4

 B. The *In re High-Tech Employee Antitrust Litigation* and the So-Called "Sensitive Company Agreement" .......................................................................................5

 C. The Allegations of the First Amended Complaint................................................6

ARGUMENT ..................................................................................................................8

I. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING ...................................................................................9

 A. Plaintiff Lacks Standing to Sue in His Personal Capacity as a Former Shareholder of Intermix ......................................................................................................9

 B. Plaintiff Lacks Antitrust Standing As Shareholder of Intermix.............................10

II. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS...................13

 A. Plaintiff's Conclusory Allegation of a "Continuing Violation" Lacks the Detail Required by *Twombly* ......................................................................................13

 B. Plaintiff Has Failed to Allege Facts to Support a Plausible Claim That the Limitations Period Should Be Tolled Because of Fraudulent Concealment. ...................14

III. PLAINTIFF FAILS TO STATE A SHERMAN ACT OR CARTWRIGHT ACT CLAIM BECAUSE THE FIRST AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE AN AGREEMENT IN RESTRAINT OF TRADE. .........................................................16

IV. PLAINTIFF'S CLAYTON ACT CLAIM SHOULD BE DISMISSED........................................21

V. PLAINTIFF'S UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED.........................23

 A. Plaintiff Fails to Allege Conduct That Violates the UCL.........................................23

 B. Plaintiff Seeks Remedies That Are Not Available Under the UCL.................................24

CONCLUSION................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*American Tobacco Co. v. United States*,
  328 U.S. 781 (1946)..................................................................................................20

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ....................................................................24

*Apple v. Samsung Elecs. Co., Ltd.*,
  No. 11-cv-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011)......................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................9

*Ass'n of Was. Pub. Hosp. Dist. v. Philip Morris, Inc.*,
  241 F.3d 696 (9th Cir. 2001) ....................................................................................12

*Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983)...................................................................................................11

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)........................................................................................*passim*

*Blue Shield of Virginia v. McReady*,
  457 U.S. 465 (1982)...................................................................................................12

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)...................................................................................................22

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986)...................................................................................................22

*Charming Shoppes Inc. v. Crescendo Partners II, L.P.*,
  557 F. Supp. 2d 621 (E.D. Pa. 2008) ........................................................................23

*Cnty. of Tulumne v. Sonora Cmty. Hosp.*,
  236 F.3d 1148 (9th Cir. 2001) ..................................................................................16

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*,
  771 F. Supp. 2d 1195 (N.D. Cal. 2011) ....................................................................18

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) ....................................................................................15

*Credit Bureau Servs. v. Experian Info. Solutions, Inc.*,
  No. SACV 12-2146 JGB, 2013 WL 3337676 (C.D. Cal. June 28, 2013) ............18, 19

*David Orgell, Inc. v. Geary's Stores, Inc.*,
  640 F.2d 936 (9th Cir. 1981) ....................................................................................14

*DM Research, Inc. v. College of Am. Pathologists*,
  170 F.3d 53 (1st Cir. 1999) .......................................................................................20

*Dooley v. Crab Boat Owners Ass'n*,
  No. C 02-0676 MHP, 2004 WL 902361 (N.D. Cal. Apr. 26, 2004)..........................11

*Drazan v. Atl. Mut. Ins. Co.*,
  No. C 10-01371 SI, 2010 WL 2629576 (N.D. Cal. June 29, 2010)...........................10

*EMI Ltd. v. Bennett*,
  738 F.2d 994, 997 (9th Cir. 1984) .........................................................................9, 10

*Florida Seed Co. v. Monsanto Co.*,
    105 F.3d 1372 (11th Cir. 1997) ........................................................................ 11

*G.K.A. Beverage Corp. v. Honickman*,
    55 F.3d 762 (2d Cir. 1995) ................................................................................ 11

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) .......................................................................... 14

*In re High-Tech Employee Antitrust Litigation*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................ 5-6, 25

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ............................................................................ 13

*Ilaw v. Daughters of Charity Health Sys.*,
    2012 WL 381240 (N.D. Cal. Feb. 6, 2012) ...................................................... 13

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
    No. CV 07-00043 MMM, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) ............ 17, 18

*Jicarilla Apache Tribe v. Supron Energy Corp.*,
    728 F.2d 1555 (10th Cir. 1984), *mod.*, 793 F.2d 1171 (10th Cir. 1086) .......... 23

*Kendall v. Visa*,
    518 F.3d 1042 (9th Cir. 2008) ...................................................................... 16, 17

*Korea Kumho Petrochemical v. Flexsys America LP*,
    2008 WL 686834 (N.D. Cal. Mar. 11, 2008) .................................................... 14

*In re Late Fee & Over Limit Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) .......................................................... 17, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................................... 21

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) .................................................. 14, 17, 19

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    269 F. Supp. 2d 1213 (C.D. Cal. 2003) ............................................................ 12

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987) ............................................................................ 13

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ............................................................................ 9

*Prime Healthcare Svcs., Inc. v. Service Employees Int'l Union*,
    No. 11-cv-02652 JLS, 2012 WL 3778348 (S.D. Cal. Aug. 30, 2012) ................ 20

*Rambus, Inc. v. Samsung Elecs. Co.*,
    No. C-05-02298 RMW, 2007 WL 39374 (N.D. Cal. Jan. 4, 2007) .................... 15

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) ........................................................................ 16-17

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ............................................................................ 15

*Shell Petroleum NV v. Graves*,
    709 F.2d 593 (9th Cir. 1983) .............................................................................. 9

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979) ............................................................................ 10

Defendant IAC/InterActive Corp's Motion to Dismiss

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
  88 F.3d 780 (9th Cir. 1996) .................................................................................................9

*Smit v. Charles Schawb & Co., Inc.*,
  No. 10-cv-03971-LHK, 2011 WL 846697 (N.D. Cal. Mar. 8, 2011)...............................25

*Solinger v. A&M Records, Inc.*,
  718 F.2d 298 (9th Cir. 1983) .............................................................................................11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979, 988 (9th Cir. 2001), *op. amended by*, 275 F.3d 1189 (9th Cir. 2001) ...........9

*Stein v. United Artists Corp.*,
  691 F.2d 885 (9th Cir. 1982) .............................................................................................11

*Stewart v. Gogo, Inc.*,
  No. C-12-5164 EMC, 2013 WL 1501484 (N.D. Cal. Apr. 10, 2013) ...............................12

*Thorman v. American Seafoods Co.*,
  421 F.3d 1090 (9th Cir. 2005) ...........................................................................................15

*TRW, Inc. v. F.T.C.*,
  647 F.2d 942 (9th Cir. 1981) .............................................................................................22

*United States v. Crocker Nat'l Corp.*,
  422 F. Supp. 686 (N.D. Cal. 1976) ....................................................................................23

*United States v. Adobe Sys., Inc.*,
  No. 1:10-cv-01629-RBW (D.D.C. Sept. 24, 2010) .............................................................5

*United States v. Stonehill*,
  83 F.3d 1156 (9th Cir. 1996) ...............................................................................................9

*Universal Grading Serv. v. eBay, Inc.*,
  No. C-09-2755 RMW, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012)......................................21

*Vinci v. Waste Mgmt., Inc.*,
  80 F.3d 1372 (9th Cir. 1996) .......................................................................................11, 12

*Volk v. D.A. Davidson & Co.*,
  816 F.2d 1406 (9th Cir. 1987) ...........................................................................................16

*William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*,
  588 F.3d 659 (9th Cir. 2009) .............................................................................................20

**State Cases**

*Aryeh v. Canon Bus. Solutions, Inc.*,
  55 Cal. 4th 1185 (2013) .....................................................................................................13

*Belton v. Comcast Cable Holdings, LLC*,
  151 Cal. App. 4th 1224 (Cal. Ct. App. 2007) ....................................................................24

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (Cal. Ct. App. 2001) ..................................................................23, 24

*Feitelberg v. Credit Suisse First Boston LLC*,
  134 Cal. App. 4th 997 (Cal. Ct. App. 2005) ......................................................................25

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...............................................................................................24, 25

*Kramer v. Western Pacific Indus.*,
  546 A.2d 348 (Del. 1988) ..................................................................................................10

Defendant IAC/InterActive Corp's Motion to Dismiss

*Leisure Mktg., Inc. v. Camp Coast to Coast,*
 No. 314452, 1987 WL 92053 (Cal. Super. Ct. Jan. 14, 1987) ............................................. 12

*Vinci v. Waste Mgmt., Inc.,*
 36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) ...................................................................... 12

**Federal Statutes**

15 U.S.C. § 15 ........................................................................................................................ 22

15 U.S.C. § 15b ...................................................................................................................... 13

15 U.S.C. § 19(a) .............................................................................................................. 21, 23

15 U.S.C. § 26 ........................................................................................................................ 22

**State Statutes**

Cal. Bus. & Prof. Code § 16720 ............................................................................................. 12

Cal. Bus. & Prof. Code § 16750.1 .......................................................................................... 13

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................................... *passim*

Cal. Bus. & Prof. Code § 17203 ............................................................................................. 24

Cal. Bus. & Prof. Code § 17208 ............................................................................................. 13

Defendant IAC/InterActive Corp's Motion to Dismiss

**DEFENDANT IAC/INTERACTIVE CORP'S**
**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on March 20, 2015, or as soon thereafter as counsel may be heard before the Honorable Ronald M. Whyte, United States District Judge, in Courtroom 6 of the above-captioned court, located at 280 South 1st Street, San Jose, California 95113, Defendant IAC/Interactive Corp ("IAC") will and hereby does move for an order dismissing Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, IAC's Request For Judicial Notice, the Declaration of Kurt A. Kappes in Support of IAC's Request for Judicial Notice, the records on file in this case, the arguments of counsel, and any other matter that the Court may properly consider, or that may be presented to the Court at the hearing.

IAC respectfully requests that the Court grant its motion and enter judgment in IAC's favor on each of Plaintiff's claims.

DATED: February 5, 2015

Respectfully Submitted,

GREENBERG TRAURIG, LLP

By      /s/ Kurt A. Kappes
            KURT A. KAPPES

1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
Email: kappesk@gtlaw.com

-and-

James I. Serota (admitted *pro hac vice*)
Anastasia A. Angelova (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: serotaj@gtlaw.com
Email: angelovaa@gtlaw.com

*Attorneys for Defendant IAC/InterActive Corp*

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This case is another futile attempt by Plaintiff Brad Greenspan to revive a decade-old dispute that he lost long ago.  Plaintiff, a former shareholder of Intermix, Inc. ("Intermix") when it owned the social networking website company MySpace, Inc. ("MySpace"), apparently believes that Defendant News Corporation ("News Corp.") paid too little for MySpace when it acquired Intermix in 2005.  Nine years ago, he sued the officers and directors of Intermix for breach of fiduciary duty; the California courts, however, dismissed his action, concluding that the transaction was approved by Intermix's shareholders after appropriate disclosures by Intermix's management and board.  Unwilling to take no for an answer, Plaintiff has resorted to outlandish conspiracy theories that are far short of plausible and has repeatedly sought new targets for his complaint, filing two new actions and seeking to intervene in others in various courts over the years.

Plaintiff's First Amended Complaint ("FAC") attempts to dress up his failed claim for breach of fiduciary duty in the new garb of an alleged antitrust conspiracy among IAC, Google Inc., and News Corp.  It is an ill-fitting costume.  According to Plaintiff, at some unspecified point, Ask Jeeves, Inc. ("Ask Jeeves"), a company which operated a search engine and was acquired by IAC in 2005, entered into an elaborate "bid-rigging conspiracy" with Google.  Google and Ask Jeeves allegedly agreed that Google would not bid for a contract to serve as MySpace's internet search provider until after News Corp. acquired MySpace.  This "agreement," in turn, somehow exponentially diminished MySpace's value at the time of the News Corp. acquisition; indeed, Plaintiff claims that if it had had a search engine contract with Google, MySpace would have been worth $32 billion, not the $580 million agreed to by News Corp. and Intermix.  Plaintiff sues in his personal capacity as a former Intermix shareholder to recover the alleged diminution in value of MySpace, alleging violations of Section 1 of the Sherman Act, the Cartwright Act, Section 8 of the Clayton Act, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

The FAC must be dismissed in its entirety for two independent, threshold reasons:  (i) Plaintiff lacks standing to bring his claims; and (ii) Plaintiff's claims are barred by the statute of limitations.  *First*, it is well-established that a shareholder lacks standing to assert claims for injury suffered by the

Defendant IAC/InterActive Corp's Motion to Dismiss

corporation and equally well-established that shareholders lack "antitrust standing" to bring Sherman Act claims on a company's behalf.  Here, Plaintiff files suit as a shareholder and seeks to redress an injury to MySpace, which is not a party to this lawsuit, but does not purport to bring a derivative claim on its behalf.  For this reason alone, the FAC should be dismissed.

*Second*, Plaintiff's suit is time barred because it was filed nine years after the alleged bid-rigging conspiracy supposedly took place in 2005, well beyond the applicable four-year statutes of limitations. Plaintiff seeks to toll the statute of limitations by alleging in conclusory terms that Defendants engaged in a "continuing violation" or "fraudulent concealment," but does not offer a single fact to support the application of those doctrines or offer any explanation for his delay or how he "discovered" the conspiracy.  Plaintiff has filed suit far too late, and his complaint must be dismissed.

In addition to these fatal flaws, the FAC fails to state a claim for relief on any of its suggested causes of action.  The FAC fails to plead a Sherman Act Section 1 claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), because it does not allege facts plausibly suggesting an agreement among Defendants.  The FAC relies on a conclusory assertion of conspiracy but does not allege any of the basic elements required to plead an agreement, such as the participants, date, location, or nature of the agreement.   Instead (and in a transparent attempt to make his decade-old grievance look brand-new), Plaintiff invokes the widely publicized, but entirely unrelated "no poach" conspiracy at issue in the *In re High-Tech Employee Antitrust Litigation* pending in this District.  That case involves alleged restrictive hiring agreements among various companies, but not Ask Jeeves or IAC.  Nevertheless, Plaintiff seeks to ensnare IAC in this separate alleged conspiracy, claiming in conclusory terms that Ask Jeeves entered into a restrictive agreement with Google not to recruit each other's executives without notice.  Given that Plaintiff was not an employee of Ask Jeeves or Google, such an agreement, even if it ever existed (which it did not), could not possibly have affected him.  Undeterred, Plaintiff makes a feeble attempt to connect this so-called "Sensitive Company Agreement" to the alleged bid-rigging conspiracy that forms the crux of the FAC by claiming that the purported agreement served as Google's "motivation" to forgo bidding on the MySpace search contract.

The absurdity of this contention is underscored by the lone document on which Plaintiff relies – an internal Google policy that on its face was not an *agreement* between Ask Jeeves and Google and in

any event purported to place (modest) hiring restrictions only on *Google*, not Ask Jeeves.  Thus, the purported "agreement" that Plaintiff claims was reached did not require Ask Jeeves to do or refrain from doing *anything* and could hardly have served as Google's "motivation" for not seeking MySpace's business.  In short, Plaintiff's complaint offers no *facts* to tie an unrelated Google hiring policy to his fanciful "bid rigging" theory.  At its core, the FAC hardly alleges any facts at all – the principal one being that Google did not bid to obtain a search engine contract from MySpace in 2005 – yet asks the Court to infer a wide-ranging conspiracy involving multiple independent public companies (as well as some non-defendant entities), various shareholders, and even the officers of MySpace and Intermix itself.  The Court should decline Plaintiff's invitation to make leap upon leap of faith, particularly given that the conduct alleged is perfectly consistent with independent, rational behavior.  Plaintiff's far-fetched and inadequately pleaded Sherman Act claim should be dismissed.

Plaintiff's claims for violations of California's Cartwright Act and Unfair Competition Law ("UCL"), which are based on the same conclusory allegations as his Sherman Act claim, also fail as a matter of law and should be dismissed for the same reasons.  Moreover, Plaintiff's UCL claim should be dismissed because it seeks to recover for an alleged decrease in share value, a remedy that California courts have rejected as not available under the UCL.

Finally, Plaintiff's claim under Section 8 of the Clayton Act based on the allegation that "interlocking directors" sat on the boards of both MySpace and Ask Jeeves should be dismissed for the additional reasons that the FAC does not sufficiently allege that MySpace and Ask Jeeves were competitors and fails to allege antitrust injury stemming from the purported violation.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Does Plaintiff, in his capacity as a former shareholder of Intermix, lack standing to sue to redress an injury suffered by MySpace?

2.     Are Plaintiff's claims barred by the applicable statutes of limitations because no tolling doctrine applies?

3.     Does the FAC fail to state antitrust claims under the Sherman Act and California's Cartwright Act because Plaintiff has not alleged sufficient facts to make it plausible to infer that an agreement was reached?

Defendant IAC/InterActive Corp's Motion to Dismiss

4.       Does the FAC fail to state a claim under Section 8 of the Clayton Act because it does not sufficiently allege that MySpace and Ask Jeeves were competitors and fails to allege antitrust injury?

5.       Does the FAC fail to state a claim under California's Unfair Competition Law because it is duplicative of Plaintiff's antitrust claims and because he may not recover the hypothetical loss of value of his Intermix shares as restitution under the UCL?

## STATEMENT OF FACTS

### A.    Plaintiff's Prior Litigation Efforts

Plaintiff Brad Greenspan is the former Chief Executive Officer of Intermix, and owned approximately 10 percent of Intermix's common stock.  FAC ¶¶ 15, 18.  Intermix in turn owned MySpace, a "social media website" founded in 2003.  *Id.* ¶ 16.  Intermix, along with MySpace, was acquired by Defendant News Corp. in July 2005 for $580 million.  *Id.* ¶¶ 18, 49.

In February 2006, Greenspan filed an amended complaint in the Superior Court of California against Intermix and its officers and directors, alleging that they had breached their fiduciary duties by entering into a transaction with News Corp. for their own personal interests and without maximizing value to Intermix's shareholders or disclosing all material information about the transaction.  *See* Declaration of Kurt A. Kappes in Support of Request for Judicial Notice ("Kappes Decl."), Ex. 1 ¶¶ 136-48.[1]  Greenspan also asserted claims based on his allegedly improper removal as an officer and director of Intermix.  *Id.* ¶¶ 153-70.  Several other shareholders filed a separate class action complaint alleging similar claims.  Kappes Decl. Ex. 2 at 2. The Superior Court dismissed both complaints with prejudice, holding that (i) the shareholders' ratification of the transaction precluded any claims for breach of fiduciary duty and (ii) there had been adequate disclosure of all material facts.  Kappes Decl., Ex. 2 at 23.  The California Court of Appeal affirmed.  Kappes Decl., Ex. 3 at 3.

A parallel federal shareholder derivative suit was also filed.  *Brown v. Brewer, et al.*, No. 2:06-cv-03731-GHK-SH (C.D. Cal.).  Greenspan was excluded as a plaintiff from the *Brown* case on *res judicata* grounds based on his separate state-court lawsuit.  Kappes Decl., Ex. 4 (Dkt. No. 391).  Undeterred,

---

[1] IAC's Request for Judicial Notice is being submitted simultaneously herewith.  For the reasons set forth therein, IAC respectfully requests that the Court consider the contents of the pleadings filed and decisions issued in *Greenspan v. Intermix Media, Inc., et al.*, No. BC 338786 (Cal. Super. Ct., County of Los Angeles), as well as the other documents attached to the Kappes Decl.

Greenspan sought to intervene anew and continued to make his own filings in that action, drawing repeated reprimands from the District Judge, who struck Greenspan's filings from the docket given that he was not a party. *See id.* (Dkt. Nos. 408, 409, 414, 421, 432, 450).

More than eight years after he filed his initial lawsuit, Greenspan filed a new complaint in April 2014 in the Delaware Court of Chancery against numerous defendants, including News Corp., IAC, various other corporations, law firms, and financial institutions. Kappes Decl. Ex. 5. Greenspan's convoluted Delaware complaint takes a scattershot approach and alleges sixteen separate counts, including, *inter alia*, for violations of Delaware's state anti-racketeering statute as well as the "Dodd-Frank whistleblower statute," all related to the theory that the "Defendants launch series [sic] of schemes and frauds to take control of publicly traded MySpace and its parent corporation eUniverse (later renamed Intermix) and oust Founder/CEO Brad Greenspan." *Id.* ¶ 34. Shortly thereafter, Greenspan also sought to intervene and introduce similar theories into an unrelated litigation in California federal court that involved alleged violations of privacy by News Corp. Kappes Decl. Ex. 6. That effort was also denied. Kappes Decl. Ex. 7.

## B. The *In re High-Tech Employee Antitrust Litigation* and the So-Called "Sensitive Company Agreement"

In 2010, the U.S. Department of Justice ("DOJ") filed a civil antitrust complaint against six companies, including Apple Inc. and Defendant Google, alleging that they had entered into express, written agreements not to "cold call" each other's engineer employees. *United States v. Adobe Sys., Inc.*, No. 1:10-cv-01629-RBW, Compl. [Dkt. 1] ¶ 16 (D.D.C. Sept. 24, 2010). Kappes Decl. Ex. 8. Neither IAC nor any IAC affiliate (including IAC Search & Media, Inc., the successor to Ask Jeeves after the 2005 IAC acquisition) was among the six company defendants. In March 2011, after extensive media coverage of the DOJ's allegations, the six companies each entered into consent decrees in which they agreed not to enter into any agreements that would restrict their hiring or recruiting practices. *Id.*, Ex. 9. Two months the DOJ action was settled, employees of the six companies filed a class-action lawsuit in this Court based on the same alleged conduct. *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509-LHK (N.D. Cal.) ("*High-Tech*"). The *High-Tech* plaintiffs alleged that the conspiracy was directed by executives and directors of Apple and Google. *See High-Tech*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal.

1   2012).  The *High-Tech* plaintiffs did not name Ask Jeeves or IAC as defendants or even mention Ask

2   Jeeves or IAC in their pleadings.  *See* Kappes Decl., Ex. 10 (Consolidated Amended Complaint).

3           The purportedly "new" matter raised in Plaintiff's FAC here is based on a document that was

4   filed in the *High-Tech* action.  Plaintiff calls this document a "Sensitive Company Agreement" between

5   Ask Jeeves and Google and quotes from it extensively.  FAC ¶ 28.  It is clear on the face of this

6   document, that it actually is not an "agreement" between Google and Ask Jeeves (or anyone else).

7   Rather, it is an internal Google document (bearing the Google logo and "Google Inc." in the footer) titled

8   "Special Agreement Hiring Policy – Protocol for 'Restricted Hiring,' 'Do Not Cold Call,' and 'Sensitive'

9   Companies."  Kappes Decl., Ex. 11.  This document appears to describe Google's own hiring policies at

10  the time with respect to employees of twenty-one identified companies, including many that neither the

11  DOJ nor the *High-Tech* Plaintiffs ever accused of participating in any alleged conspiracy or unlawful

12  agreement.  The companies were divided into three categories or lists, respectively titled "Restricted

13  Hiring," "Do Not Cold Call," and "Sensitive."  "Ask.com" (the new name for the Ask Jeeves search

14  engine after the IAC acquisition) was included in the "Sensitive" category, which was reserved for

15  companies that had with existing business "partnerships" with Google and therefore would receive a

16  "courtesy call" from Google "to let them know we have made an offer" to one of their employees for a

17  director-level or above position."  *Id.* at 2 (emphasis deleted).  Notably, this internal Google policy did

18  not reflect or otherwise refer to any purported agreement binding Ask Jeeves or IAC (or any other

19  company listed) or prohibiting or limiting in any way Ask Jeeves's or IAC's ability to recruit Google's

20  employees.  None of the "Sensitive" list companies has been implicated in the DOJ or *High-Tech* actions.

21  **C.**     **The Allegations of the First Amended Complaint**

22          Nine years after his unsuccessful state court action challenging the Intermix/News Corp.

23  transaction, Plaintiff filed this action on September 16, 2014 against IAC, Google, News Corp., and

24  individual defendants Geoff Yang and David Carlick, who are alleged to be former directors of MySpace

25  and Ask Jeeves.  Dkt. No. 1 ¶¶ 9-13.  Plaintiff withdrew his initial complaint and filed the FAC on

26  December 30, 2014.  Dkt. No. 6.  The FAC removes Yang and Carlick as defendants and asserts claims

27  against the remaining defendants for violations of Section 1 of the Sherman Act, the Cartwright Act, and

28  the UCL, as well as a claim against IAC only for violation of Section 8 of the Clayton Act.  The FAC

1    alleges two distinct agreements that purportedly violated the antitrust laws:  a "bid-rigging" conspiracy

2    among Ask Jeeves, Google, and News Corp. and the so-called "Sensitive Company Agreement" between

3    Google and Ask Jeeves.  FAC ¶¶ 67-71.[2]

4           Plaintiff alleges that search engine providers, such as Google or Yahoo, were willing to pay

5    substantial sums to MySpace for the right to "serve as MySpace's search engine," because such a

6    contract would drive "traffic" to those sites.  FAC ¶ 23.  Yahoo served as MySpace's search engine from

7    June 2003 through June 2005, and when the search contract expired, the board of directors of MySpace

8    declined to renew it.  *Id.* ¶¶ 22, 24.  Plaintiff alleges that this left MySpace without a search engine

9    partner and corresponding revenue.  *Id.* ¶ 24.  As a result, a company called Revenue Science became

10   MySpace's "interim search engine provider," but the terms of that arrangement are not explained.  *Id.*

11   Although Revenue Science is not a defendant, Plaintiff alleges that it "secretly filtered traffic through

12   AOL and Ask.com so [that] those companies would have an artificial spike in search traffic."  *Id.*

13   Plaintiff claims in conclusory terms that Ask Jeeves's motivation for allegedly agreeing to this

14   arrangement was to increase its value and "ultimately [sell] itself to IAC at an astronomical price."  *Id.* ¶¶

15   24, 41.  According to the FAC, however, Ask Jeeves was acquired by IAC in March 2005, several

16   months before the Yahoo contract expired and Revenue Science began to "secretly" direct MySpace's

17   traffic to Ask Jeeves and AOL.  *Id.* ¶ 19 ("In or around March 2005, IAC acquired Ask.com.").[3]  The

18   FAC does not explain how events that occurred after the purchase price was agreed upon could have

19   affected the price.

20

21

---

22   [2] In his initial complaint, Plaintiff purported to represent a class consisting of "[a]ll persons who worked
     at any time from 2004 to the present for [IAC] in the United States in technical, artistic, creative, research
23   and development positions, and or [sic] as officers, directors, and or [sic] senior executives."  Dkt. No. 1
     ¶ 32.  Doubtlessly recognizing that he could not represent a class of former IAC employees having never
24   been an IAC employee, Plaintiff dropped this proposed class from the case.  FAC ¶ 55.

25   [3] The FAC also alleges, in contradictory fashion, that Ask Jeeves was acquired in July 2005.  FAC ¶ 47.
     Giving Plaintiff the benefit of the doubt, it appears that he may have intended to allege that the IAC
26   acquisition was *announced* in March 2005, but did not *close* until July 2005.  This is in fact what
     happened.  Accordingly to publicly available press releases, the sale of Ask Jeeves to IAC for $1.85
27   billion was announced in March 2005, and the transaction was completed in July 2005.   *See* Kappes
     Decl. Exs. 12, 13.
28

The crux of Plaintiff's complaint is that Google did not make a bid to become MySpace's search partner in June 2005 because it had "secretly come to an agreement with Ask Jeeves not to make the bid until MySpace was acquired by News Corp." FAC ¶ 25. The FAC does not explain who entered into this agreement, when, where, or whether it was a written or oral agreement. Plaintiff alleges that "[i]n exchange, Google asked Ask.com to enter into a Sensitive Company Agreement with Google, whereby AskJeeves agreed not to solicit any of Google's directorial executives or above candidates, and vice versa." *Id.* ¶ 26.

Although MySpace is not a party, Plaintiff claims that MySpace was the victim of this alleged conspiracy, in that "News Corp. was able to purchase MySpace at a severe discount by purchasing MySpace during a time when (i) Google was withholding a bid for exclusive [sic] search engine contract, and when (ii) Yang and Carlick directed MySpace not to renew an exclusive search engine contract with Yahoo or any other search engine in order to have Google wait on a bid for a search engine contract until AskJeeves … was purchased by IAC." FAC ¶ 42. Thus, Plaintiff seeks damages to recover "the difference between the price that News Corp acquired MySpace [sic] with AskJeeves acting as the search engine for MySpace, and the value MySpace would have been worth at that same time had Google not agreed to forego bidding on an exclusive search engine contract with MySpace." FAC ¶ 53. He purports to represent a class of "[a]ll shareholders of Intermix at the time of its acquisition by News Corp …."[4] *Id.* ¶ 55.

## ARGUMENT

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the claims asserted in the complaint and serves to weed out deficient lawsuits before parties engage in expensive discovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). A court can dismiss a complaint for failure to state a claim based on (1) a "lack of cognizable legal theory" or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). In order to survive a

---

[4] Plaintiff purports to exclude from this class "the claims against News Corp released in *Brown v. Brewer, et al.*, No. 2:06-cv-03731-GHK-SH (C.D. Cal.)." FAC ¶ 55. Exactly what this means and whom or what Plaintiff purports to exclude are unclear, as it does not appear that News Corp. was a defendant in the *Brown* case.

Defendant IAC/InterActive Corp's Motion to Dismiss

motion to dismiss, a plaintiff must plead "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556-57, 570). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement" or "threadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Id.* While the Court must accept as true all well-pleaded factual allegations in the complaint, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). Nor should the Court accept allegations that are contradicted by facts set forth in documents incorporated by reference or otherwise subject to judicial notice. *See Paulsen*, 559 F.3d at 1071; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *op. amended by*, 275 F.3d 1189 (9th Cir. 2001) (courts need not assume the truth of allegations that "contradict matters properly subject to judicial notice or by exhibit" or are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

# I. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING.

## A. Plaintiff Lacks Standing to Sue in His Personal Capacity as a Former Shareholder of Intermix.

The FAC should be dismissed in its entirety because Plaintiff lacks standing to bring claims in his personal capacity as a former shareholder of MySpace's former parent company, Intermix, in order to redress alleged injuries to MySpace. It has long been recognized that "[g]enerally, a shareholder does not have standing to redress an injury to the corporation in which it owns stock." *EMI Ltd. v. Bennett*, 738 F.2d 994, 997 (9th Cir. 1984); *Shell Petroleum NV v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) (same); *see also United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996) ("Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party."). To have standing, "a shareholder must assert more than personal economic injury resulting from a wrong to a corporation." *Shell Petroleum*, 709 F.2d at 595. A shareholder may, however, bring a derivative suit to enforce the corporation's rights and redress

its injuries, but only if the corporation fails to act. *See Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 440 n.13 (9th Cir. 1979).[5]

Here, Plaintiff brings a claim on his own behalf to redress an alleged injury to MySpace and recover the diminution in the value of his Intermix shares, as a result of a purportedly unlawful antitrust bid rigging conspiracy entered into by third parties. The FAC does not purport to be a derivative suit on MySpace or Intermix's behalf, nor does it allege that either corporation has refused to act.[6] Plaintiff does not even allege that he ever was a shareholder of MySpace itself, as opposed to its parent company, Intermix. FAC ¶¶ 15, 53. To the extent the alleged conspiracy injured him at all, it could only have done so by reducing the value of his Intermix shares, but that injury is indirect and derivative of the injury to MySpace. Because a shareholder of a parent corporation has no standing to sue for wrongs allegedly perpetrated by a third party on its subsidiary, the FAC must be dismissed in its entirely. *See EMI*, 738 F.2d at 997; *Sherman*, 601 F.2d at 439 (dismissing federal antitrust claims and pendent state law claims brought by individual stockholder of corporation for lack of standing); *Drazan v. Atl. Mut. Ins. Co.*, No. C 10-01371 SI, 2010 WL 2629576, at *3 (N.D. Cal. June 29, 2010) (dismissing UCL claim brought by shareholders for lack of standing because "a shareholder generally may not maintain an action in his or her individual capacity against a third party on the grounds that the third party's alleged wrong devalued the corporation's stock").

## B.    Plaintiff Lacks Antitrust Standing as a Shareholder of Intermix.

Plaintiff's Sherman Act, Clayton Act, and Cartwright Act claims must be dismissed for the additional reason that a shareholder of a corporation lacks antitrust standing to bring antitrust claims on its behalf. Although Section 4 of the Clayton Act allows "any person who shall be injured in his business or property" to bring a claim for violation of the antitrust laws, the Supreme Court has imposed a requirement that every plaintiff must plead and prove "antitrust standing," which is based on "the

---

[5] This rule is consistent with Delaware corporate law, under which "to have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation." *Kramer v. Western Pacific Indus.*, 546 A.2d 348, 351 (Del. 1988).

[6] According to the California Secretary of State, "MySpace LLC" remains an active Limited Liability Company located in Beverly Hills, California. *See* Kappes Decl. Ex. 15.

1  plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them."

2  *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535

3  (1983).[7]

4          Courts have consistently held that shareholders of a corporation are not sufficiently direct victims

5  of an antitrust conspiracy and that their injury is too remote to confer antitrust standing. "A shareholder

6  of a corporation injured by antitrust violations has no standing to sue in his or her own name[.]" *Solinger*

7  *v. A&M Records, Inc.*, 718 F.2d 298, 299 (9th Cir. 1983); *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1375

8  (9th Cir. 1996) (dismissing plaintiff shareholder's antitrust claim for lack of standing). Indeed, "[i]f

9  shareholders were permitted to recover their losses directly, there would be the possibility of a double

10  recovery, once by the shareholder and again by the corporation." *Stein v. United Artists Corp.*, 691 F.2d

11  885, 896-97 (9th Cir. 1982). The Ninth Circuit is not alone in applying this bright-line rule. *See, e.g.,*

12  *Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1376 (11th Cir. 1997) (dismissing antitrust claim and

13  stating that "Courts uniformly have held that stockholders, even sole stockholders such as [plaintiff], lack

14  standing to bring an antitrust suit for injury to their corporations."); *G.K.A. Beverage Corp. v.*

15  *Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995) ("Merely derivative injuries sustained by employees,

16  officers, stockholders, and creditors of an injured company do not constitute 'antitrust injury' sufficient

17  to confer antitrust standing.") (quotation omitted).

18          Because Plaintiff is a former shareholder, any injury he allegedly suffered is indirect and

19  derivative of that suffered by the corporation. Thus, Plaintiff lacks standing to assert antitrust claims.

20  *See Vinci*, 80 F.3d at 1375; *Dooley v. Crab Boat Owners Ass'n*, No. C 02-0676 MHP, 2004 WL 902361,

21  at *12 (N.D. Cal. Apr. 26, 2004) (following *Vinci* and dismissing antitrust claim brought by individual in

22

23

24

25  ───────────────
[7] The factors to be considered in assessing whether a plaintiff has antitrust standing are: (1) the causal
26  connection between the antitrust violation and the harm to plaintiff; (2) the nature of the injury, including
whether plaintiff is a consumer or competitor in the relevant market; (3) the directness of the injury, and
27  whether the damages are too speculative; (4) the potential for duplicative recovery, and whether the
apportionment of damages would be too complex; and (5) the existence of more direct victims.
28  *Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 537-44.

1  his capacity as shareholder of allegedly injured entity).  As a result, Plaintiff's Sherman Act, Cartwright

2  Act, and Clayton Act claims must be dismissed.[8]

3      Plaintiff also lacks antitrust standing to state a claim based on the so-called "Sensitive Company

4  Agreement" ("SCA"), because, even assuming that Google and Ask Jeeves entered into an agreement

5  that restricted their ability to recruit each other's employees (which they did not, *see* Point III, *infra*), the

6  FAC does not sufficiently allege a nexus between the SCA and Plaintiff's alleged injury.  It is black-letter

7  law that for a plaintiff to have antitrust standing there must be a "physical and economic nexus" between

8  the alleged violation and the harm to plaintiff, a requirement that looks to whether the alleged injury was

9  proximately caused by the anticompetitive conduct.  *Blue Shield of Virginia v. McReady*, 457 U.S. 465,

10  477 (1982).  In other words, there must be a "direct relationship between the injury and the alleged

11  wrongdoing." *Ass'n of Was. Pub. Hosp. Dist. v. Philip Morris, Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).

12      The FAC alleges two separate agreements – a "bid rigging conspiracy" and the SCA – both of

13  which are alleged to be *per se* violations of the Sherman Act.  FAC ¶¶ 70, 32.  Critically, however, the

14  FAC does not allege that Plaintiff was injured by the SCA, since he does not (and cannot) allege that he

15  ever worked for Ask Jeeves or Google.  The sole injury that Plaintiff alleges is the difference in the price

16  at which MySpace was actually acquired by News Corp. and the price at which he claims it would have

17  been acquired "had Google not agreed to forego bidding on an exclusive search engine contract with

18  MySpace." FAC ¶ 53.  Even if this injury occurred, it resulted directly from the alleged bid-rigging

19  agreement, *not* the SCA.  Plaintiff's lengthy discussion of the harm that the SCA allegedly caused to

20  employees of Ask Jeeves, FAC ¶¶ 33-38, is an irrelevant sideshow because, quite simply, any such harm

21  could not have affected him.  Because there is no nexus between any hiring practices of Google or Ask

22  Jeeves and Plaintiff's claimed injury, he lacks standing to pursue antitrust claims based on the SCA.  *See*

23  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1221-22 (C.D. Cal. 2003).

24

25  [8] Plaintiff's claim under the Cartwright Act, California's state antitrust law, Cal. Bus. & Prof. Code 16720, *et seq.*, must be dismissed for the same reasons as the federal antitrust claims, because "analysis

26  under California's antitrust law mirrors the analysis under federal law." *Stewart v. Gogo, Inc.*, No. C-12-5164 EMC, 2013 WL 1501484, at *5 (N.D. Cal. Apr. 10, 2013) (quotation omitted). As a result, courts

27  have dismissed claims by shareholders under the Cartwright Act for lack of antitrust standing.  *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1815 (Cal. Ct. App. 1995); *Leisure Mktg., Inc. v. Camp Coast*

28  *to Coast*, No. 314452, 1987 WL 92053, at *15 (Cal. Super. Ct. Jan. 14, 1987).

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiff's FAC, filed nine years after the alleged wrongful acts and the single claimed injury, is barred by the statutes of limitations.   A claim should be dismissed as time-barred under Rule 12(b)(6) when "the running of the statute is apparent on the face of the complaint."   *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citation and internal quotation marks omitted).   The four-year statute of limitations for Sherman Act claims began to run in July 2005, when News Corp acquired MySpace and Plaintiff alleges he was injured.   FAC ¶¶ 49, 53; *see* 15 U.S.C. § 15b; Cal. Bus. & Prof. Code § 16750.1;[9] *see also Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (Sherman Act claim "accrues each time a plaintiff is injured by an act of the defendant").[10]   The statute of limitations thus expired in July 2009.

If the statute of limitations has run, "a plaintiff must allege facts to support a plausible claim that [an] equitable tolling doctrine applies in order to survive a motion to dismiss."   *Ilaw v. Daughters of Charity Health Sys.*, No. 11-cv-02752-LHK, 2012 WL 381240, at *4 n.4 (N.D. Cal. Feb. 6, 2012).   Plaintiff seeks to toll the limitations period by alleging a "continuing violation" and that IAC engaged in "fraudulent concealment."   FAC ¶¶ 63-66.   Plaintiff, however, has failed to plead sufficient facts to invoke either tolling doctrine, and the statute of limitations therefore bars his claims.

### A.   Plaintiff's Conclusory Allegation of a "Continuing Violation" Lacks the Detail Required by *Twombly*.

The Complaint contains a conclusory allegation that "Defendants' conspiracy was a continuing violation," FAC ¶ 63, but fails to substantiate this with any facts.   "[W]hen a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act."   *Pace*, 813 F.2d at 237.   An "overt act" has two elements:   "[i]t must be a new and independent act that is not merely a reaffirmation of a previous act; and . . . it must inflict

---

[9] Plaintiff's Cartwright Act claim and UCL claim are also barred by the applicable four-year statute of limitations. *See* Cal. Bus. & Prof. Code §§ 16750.1, 17208.

[10] This "injury accrual" rule also applies to Plaintiff's claims under California law. *See Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (holding that claims under the UCL accrue with "the *occurrence* of the last element essential to the cause of action," those elements being "wrongdoing, harm, and causation") (citation and internal marks omitted) (emphasis added); *id.* at 1195 (observing that interpretations of the Sherman Act are instructive when construing the Cartwright Act).

1    new and accumulating injury on the plaintiff." *Id.* at 238.  Plaintiff fails to allege either element.

2    Plaintiff does not even attempt to allege that he was injured in the limitations period.  The only injury

3    allegedly occurred in 2005.  *See* FAC ¶¶ 69, 75, 82, 89.  Simply asserting that the conspiracy continued,

4    without alleging injury, does not meet the "continuing violation" test.

5         Even setting aside the injury requirement, Plaintiff has not alleged any "new and independent

6    acts" to advance the claimed conspiracy that occurred during the four-year limitations period.  *See David*

7    *Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938 (9th Cir. 1981) (affirming dismissal of antitrust

8    claim where plaintiff did not adequately plead overt acts occurred during the limitations period);

9    *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1106 (N.D. Cal. 2012) (Whyte, J.) (claims

10   time-barred where plaintiff failed to plead "overt" act within limitations period); *see also  Korea Kumho*

11   *Petrochemical v. Flexsys America LP*, No. C07-01057 MJJ, 2008 WL 686834, at *8 (N.D. Cal. Mar. 11,

12   2008) (plaintiffs allegation that "conspiracy extended into 2005 and beyond" was not "supported by

13   factual allegations in the [complaint] that meet the *Twombly* standard").  The conspiracy that Plaintiff has

14   concocted was, by his own admission, completed in 2005 at the time of the News Corp./Intermix

15   transaction, and the facts alleged in the FAC all occurred in 2005.  The supposed "Sensitive Company

16   Agreement" was entered into in March 2005; Google did not "make a bid to be the exclusive search

17   engine for MySpace with the Yahoo Contract ended" in June 2005; and News Corp. acquired MySpace

18   in July 2005.  FAC ¶¶ 18, 24, 25, 28.  Plaintiff has failed to allege any actions that took place within the

19   limitations period and thus failed to properly invoke the "continuing violation" doctrine.

20        **B.    Plaintiff Has Failed to Allege Facts to Support a Plausible Claim That the**
              **Limitations Period Should Be Tolled Because of Fraudulent Concealment.**

21

22        Plaintiff also attempts to rely on the doctrine of fraudulent concealment to toll the statutes of

23   limitation.  Under that doctrine, Plaintiff must allege facts establishing:  (1) that he was affirmatively

24   misled by Defendants; (2) that he had neither actual nor constructive knowledge of the facts giving rise to

25   his claim before the running of the limitations period; and (3) that he exercised due diligence in

26   attempting to discover the facts.  *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir.

27   2012).  Plaintiff's ignorance of his claims does not suffice.  *See Volk v. D.A. Davidson & Co.*, 816 F.2d

28   1406, 1416 (9th Cir. 1987) (affirming dismissal where defendants "passively concealed the reports

1   [containing damning information] by not disclosing them to the investors. In such situations, the federal

2   tolling doctrine does not apply," and noting that plaintiffs' "mere ignorance of the cause of action does

3   not, in itself, toll the statute"). Because fraud is the underlying theory of fraudulent concealment,

4   Plaintiff's allegations must also meet Rule 9(b)'s heightened pleading standard. *See Rambus, Inc. v.*

5   *Samsung Elecs. Co.*, No. C-05-02298 RMW, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4, 2007) (Whyte, J.).

6   Because Plaintiff has not alleged that IAC, or any other Defendant, affirmatively misled him, the

7   fraudulent concealment doctrine does not apply.

8       The only allegations in the FAC directed to fraudulent concealment concern Plaintiff's own

9   knowledge: he "did not have actual or constructive notice, and was not on inquiry notice of certain facts"

10  before October 9, 2012, and "could not have discovered the Sensitive Company Agreement." FAC ¶ 65.

11  These bare allegations are not enough. Plaintiff does not claim that Defendants misled him, much less

12  how they did so, with the specificity required by Rule 9(b). Nor does Plaintiff explain what occurred on

13  October 9, 2012 that suddenly placed him on inquiry notice. Instead, Plaintiff repeatedly asserts that

14  Defendants' conduct was "secret," FAC ¶¶ 24, 25, 32, 43, 46, but "[m]erely keeping someone in the dark

15  is not the same as affirmatively misleading him." *Thorman v. American Seafoods Co.*, 421 F.3d 1090,

16  1095 (9th Cir. 2005) (rejecting fraudulent concealment claim); *see also Rutledge v. Boston Woven Hose*

17  *& Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (conclusory allegations that defendant, *inter alia*,

18  "resort[ed] to secrecy to avoid detection" held insufficient to invoke fraudulent concealment doctrine).

19      Plaintiff also fails to allege that he did anything to investigate his claims once his suspicions were,

20  or should have been aroused. *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120-21 (9th Cir.

21  1980) (affirming dismissal on statute of limitations grounds where complaint fails to allege "due

22  diligence" and "does not allege any facts … tending to excuse [plaintiff's] failure to discover

23  [defendant's] misconduct"). As a former CEO and shareholder of Intermix (which owned MySpace),

24  Plaintiff was in a position to know in 2005 that, allegedly, MySpace did not renew its Yahoo search

25  contract, Google did not bid to become MySpace's search provider, and the purchase price paid by News

26  Corp. was artificially low – especially given his contention that MySpace would have been worth $32

27  billion, rather than $580 million, with Google as its search provider. FAC ¶¶ 49-50. Plaintiff possessed

28  all of the facts upon which he relies in the FAC in 2005, but failed to investigate or file his claim.

Indeed, perhaps the best measure of the weakness of Plaintiff's tolling arguments is that he did in fact file a lawsuit challenging the sale of MySpace in 2005. That he lost means only that his claims are meritless, not that he was unaware of them. As a result, his FAC is untimely and must be dismissed.[11]

## III. PLAINTIFF FAILS TO STATE A SHERMAN ACT OR CARTWRIGHT ACT CLAIM BECAUSE THE FIRST AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE AN AGREEMENT IN RESTRAINT OF TRADE.

Plaintiff's Sherman and Cartwright Act claims must be dismissed for the additional reason that the FAC fails to allege facts sufficient to support its conclusory assertions that Defendants entered into an anticompetitive agreement.[12] Because proof of an "agreement" is the key element of an antitrust conspiracy, in order to survive a motion to dismiss a Section 1 claim, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In *Twombly*, the Court made clear that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." *Id.* at 555.

The critical lesson of *Twombly* is that if the "allegedly conspiratorial actions could equally have been prompted by lawful, independent goals," then no basis exists to infer an illegal agreement, and the Section 1 claim should be dismissed at the pleading stage. 550 U.S. at 566-67 (quotation omitted). As a result, "[a]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id.* at 556. *Twombly* requires that the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level;" that is, the allegations must provide "plausible grounds to infer an agreement." *Id.* at 555-56. This means that a complaint may not rest on conclusory allegations of conspiracy, but must "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa*, 518 F.3d 1042, 1048 (9th Cir. 2008); *Rick-Mik Enters., Inc. v. Equilon Enters.*,

---

[11] In addition, Plaintiff claims that he was not on constructive notice until October 9, 2012, FAC ¶ 65, but ignores that there was widespread reporting about the DOJ investigation in 2009 and early 2010. Starting in mid-2009, many widely-read publications reported on the DOJ's investigation into employment practices at high tech companies, including the Wall Street Journal's report that the DOJ was investigating IAC. Kappes Decl., Ex 14.

[12] As discussed above, the analysis of Plaintiff's Cartwright Act claim "mirrors the analysis" under the Sherman Act. Since Plaintiff has failed to plead a viable Sherman Act claim, his Cartwright Act claim based on the same conduct must also fail. *See supra* n.8; *Cnty. of Tulumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001).

1    *LLC*, 532 F.3d 963, 976 (9th Cir. 2008) (dismissing complaint where "[a]ll that is alleged is that there

2    was an agreement on price").

3         Plaintiff's FAC is devoid of any such factual detail regarding the Defendants' so-called bid-

4    rigging agreement.   The FAC alleges only that "Google agreed in advance, at Carlick and Yang's

5    direction, not to bid to become the search engine for MySpace until it was sold to News Corp."   FAC ¶

6    40; *see also* FAC ¶ 68 ("Defendants agreed in advance that search traffic would be secretly rerouted to

7    AskJeeves until its acquisition by defendant IAC, and that Google would wait until MySpace's sale to

8    News Corp before submitting the winning bid on a search engine contract with MySpace.").   Defendants

9    Carlick and Yang are alleged only to be shareholders and members of the board of directors of Ask

10   Jeeves, but not officers or controlling members of its board.   FAC ¶¶ 20-21.  The FAC does not explain

11   how Carlick or Yang were able to bind Ask Jeeves on their own or how or why Google could or would

12   agree to do anything "at Carlick and Yang's direction."   Regardless, even if one were to interpret the

13   FAC as alleging that Carlick and Yang entered into an agreement with Google and News Corp., the FAC

14   alleges no specific facts regarding the formation or enforcement of that alleged agreement.   The FAC is

15   completely silent as to *who* at Google or News Corp. Carlick and Yang supposedly agreed with, where or

16   how these individuals reached their purported agreement, whether the agreement was written, oral, or

17   tacit, or when the agreement was formed or ended.   Indeed, the FAC at one point suggests that News

18   Corp. might not have agreed to anything at all, but, rather, merely supposedly "knew about the secret bid

19   rigging agreement between AskJeeves and Google."   FAC ¶ 43.

20        Courts have routinely held that such vague and unspecific allegations of a conspiracy are

21   insufficient to state a Section 1 claim.  *Kendall*, 518 F.3d at 1047-48; *MedioStream, Inc.*, 869 F. Supp. 2d

22   at 1104 (dismissing Sherman Act claim where complaint did not allege "whether [the] agreements are

23   written, oral or tacit, when they were executed, who made the decisions, or with which OEMs such

24   agreements were made"); *In re Late Fee & Over Limit Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007)

25   (dismissing complaint that included "several conclusory allegations that defendants agreed to increase

26   late fees but provide[d] no details as to when, where, or by whom this alleged agreement was reached").[13]

27   _____

28   [13] *See also Int'l Norcent Tech v. Koninklijke Philips Electronics, N.V.*, No. 07-00043, 2007 WL 4976364, at *10 (C.D. Cal. Oct. 29, 2007) (plaintiff "has not alleged when the purported agreement was made …

                                        17                        5:14-cv-04187-RMW

1    The factual allegations in the FAC are, if anything, far weaker than those pleaded in *Twombly*.

2    Not only does Plaintiff rely on only a conclusory allegation of an agreement, but the FAC does not even

3    allege parallel conduct, much less any facts that would constitute "plausible grounds to infer an

4    agreement." *Twombly*, 550 U.S. at 556-57; *Int'l Norcent Tech.*, 2007 WL 4976364, at *10 (finding that

5    complaint provided even less specificity than in *Twombly* where it relied on conclusory allegation of

6    conspiracy without parallel conduct). The FAC does not, for example, allege that Ask Jeeves *also* agreed

7    not to bid on the MySpace search engine contract or that it agreed with Google on the terms of such a

8    bid. In fact, despite attempting to state a "bid rigging" claim, the FAC does not even allege that

9    MySpace solicited any bids at all, and there is no indication that Ask Jeeves, Yahoo, or any other

10   competitor of Google in the internet search engine market submitted a bid. Thus, the FAC in the end

11   alleges neither a "bid" nor any "rigging." This lack of specificity requires dismissal of the FAC. *See*

12   *Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011)

13   (Whyte, J.) (dismissing bid-rigging claim because "[plaintiff] needs to allege more specific predatory or

14   conspiratorial conduct to make it plausible that [defendant] 'rigged' the bidding process").

15       The FAC fails to state a claim for the additional reason that it alleges facts that are equally

16   consistent with lawful independent conduct: that MySpace decided not to renew its contract with Yahoo

17   to provide internet search functionality, that Ask Jeeves obtained that search traffic upon the contract's

18   expiration, and that Google did not make a bid to serve as MySpace's search engine until after MySpace

19   was acquired by News Corp. The FAC alleges no facts that tie these actions together into a conspiracy,

20   such as circumstantial evidence or "plus factors" suggesting an agreement. To the contrary, these actions

21   are as easily (indeed, *more* easily) explained as self-interested, rational conduct. Ask Jeeves had its own

22   independent incentive to attract as much search traffic as possible, and Google may not have wanted to

23   bid on MySpace's search engine business at a particular point in time for any number of business

24   reasons, including its own independent assessment of when it could make the best deal. Because the

25

26   who made the decision, how it was made or what the parameters of the agreement were"); *Credit Bureau*
     *Servs. v. Experian Info. Solutions, Inc.*, No. SACV 12-2146 JGB, 2013 WL 3337676, at *8 (C.D. Cal.
27   June 28, 2013) (dismissing antitrust claims where plaintiff failed to allege "where, when, or who
     participated in the alleged agreement" and referred only to an "unidentified agreement or understanding
28   between the Defendants").

1   conduct alleged is "just as much in line with a wide swath of rational and competitive business strategy,"

2   as it is with any imagined conspiracy, the FAC fails to allege an unlawful agreement and should be

3   dismissed. *Twombly*, 550 U.S. at 554; *Mediostream, Inc.*, 869 F. Supp. 2d at 1104 (declining to infer

4   agreement "[g]iven the vast array of reasons why an OEM might choose to adopt one media platform

5   over another"); *Credit Bureau Svcs.*, 2013 WL 3337676, at *9 (dismissing Sherman Act claim in light of

6   an "obvious alternative explanation" for the conduct alleged, rendering the conspiracy implausible)

7   (quotation omitted).

8        Far from supporting an inference of conspiracy, Plaintiff's convoluted allegations actually

9   undermine any such inference and contradict his own theory of the case for two principal reasons, thus

10  rendering the notion that an agreement ever existed completely implausible.[14]   *First*, while the FAC

11  alleges that Google agreed not to bid for MySpace's search business, it does not allege that Ask Jeeves

12  agreed to do *anything*.   Plaintiff claims that "the Sensitive Company Agreement that Google secretly

13  entered into with AskJeeves was the motivation for Google to rig the bidding process and not make a bid

14  on the search engine contract until News Corp purchased Intermix, along with its crown jewel,

15  MySpace."  FAC ¶ 40.  However, the so-called "Sensitive Company Agreement" is, on its face, not an

16  agreement between Ask Jeeves and Google at all.  Kappes Decl., Ex. 11.  Rather, it is a Google document

17  that appears to set forth Google's policy regarding recruiting prospective employees from certain

18  "sensitive" companies, including Ask Jeeves's successor, Ask.com.  It does not, however, purport to

19  restrict Ask Jeeves from recruiting Google's employees in any way.  Ask Jeeves was not bound by any

20  Google "Hiring Policy," and, judging from the very document that Plaintiff relies on, Ask Jeeves was

21  free to recruit whatever Google executives however it wished without restriction.

22

23  _____

24  [14]  Plaintiff's allegations are also inconsistent with those in his prior action against Intermix and its
    officers and directors, in which he claimed that the purchase price of Intermix by News Corp. was too
25  low because the officers and directors of Intermix breached their fiduciary duties to its shareholders and
    completed the sale to News Corp. out of self-interest.  Kappes Decl., Ex. 1 ¶¶ 144-48.  While Plaintiff
26  now claims that MySpace's value was diminished at the time of the News Corp. transaction because it
    did not have a search engine contract, he alleged in his prior action that "MySpace was enjoying huge
27  growth in the months surrounding the News Corp transaction.  In fact, it was growing so fast that it was
    significantly more valuable and attractive at the time the shareholders approved the merger on September
28  30, 2005, than it had been when the deal was announced on July 18, 2005."  *Id.* ¶ 145.

1    The FAC, in other words, posits the utterly implausible theory that Google decided to provide

2    Ask Jeeves – its competitor in the internet search engine space – with a gift.  According to Plaintiff,

3    Google agreed not to bid on the supposedly lucrative MySpace search business, despite the risk that Ask

4    Jeeves, Yahoo, or some other competitor would obtain it, and, in exchange, Google *also* agreed that it

5    would not recruit Ask Jeeves's executives without notifying the company first.  Simply put, there is no

6    *quid pro quo* here (rather, two *quids* and no *quo*), and as such the FAC fails to allege a "unity of purpose

7    or a common design and understanding, or a meeting of minds in an unlawful arrangement."  *American*

8    *Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *Apple v. Samsung Elecs. Co., Ltd.*, No. 11-cv-

9    01846-LHK, 2011 WL 4948567, at *7 (N.D. Cal. Oct. 18, 2011) (dismissing antitrust counterclaim

10   where defendant alleged unilateral conduct that was incompatible with concerted action); *Prime*

11   *Healthcare Svcs., Inc. v. Service Employees Int'l Union*, No. 11-cv-02652 JLS, 2012 WL 3778348, at *5

12   (S.D. Cal. Aug. 30, 2012) (dismissing Section 1 claim where plaintiff "merely identifies the purported

13   objective of the alleged conspiracy" but alleges only independent action).  Moreover, because Plaintiff's

14   theory makes no economic sense, in that it offers no explanation why Google would ever agree to such an

15   irrational arrangement, the FAC fails to plausibly allege a conspiracy.  *See William O. Gilley Enters., Inc.*

16   *v. Atlantic Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (to support an antitrust claim, factual

17   allegations must be "plausible in light of basic economic principles"); *Universal Grading Serv. v. eBay,*

18   *Inc.*, No. C-09-2755 RMW, 2012 WL 70644, at *5 (N.D. Cal. Jan. 9, 2012) (Whyte, J.) (dismissing

19   Sherman Act claims where the alleged scheme "does not make 'economic sense'") (quoting *Matsushita*

20   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also DM Research, Inc. v. College*

21   *of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (affirming dismissal of complaint that alleged

22   "highly implausible" conspiracy).

23          *Second*, the premise of Plaintiff's theory regarding *Ask Jeeves'* supposed motivation for entering

24   into the alleged "agreement" also does not withstand scrutiny.  The FAC alleges that Ask Jeeves entered

25   into an agreement with Google so that, starting at the earliest in June 2005, it could obtain MySpace's

26   search traffic and thereby inflate its value before being purchased by IAC.  *See* FAC ¶ 41 ("This

27   arrangement … benefited AskJeeves because it ultimately sold itself to IAC at an astronomical price.").

28   To conceal the purported scheme, the FAC goes on to allege, "AskJeeves secretly arranged for an interim

Defendant IAC/InterActive Corp's Motion to Dismiss

1   search provider, Revenue Science, to perform the search engine function for MySpace, thereby routing

2   search traffic to AskJeeves." FAC ¶ 46.[15]  However, this entire theory makes no economic sense because

3   the Ask Jeeves acquisition was announced by IAC in March 2005, months *before* MySpace's contract

4   with Yahoo expired.  FAC ¶ 19 ("In or around March 2005, IAC acquired Ask.com.")  Even if Plaintiff's

5   allegations regarding "secret routing" were true, they could not possibly have had any impact on the price

6   IAC already had agreed to pay for Ask Jeeves.  Thus, Plaintiff's own theory regarding Ask Jeeves's

7   economic incentives is completely undermined by the facts pleaded in the FAC.  For this additional

8   reason, Plaintiff's claim is utterly implausible, and the antitrust claims must be dismissed.

9   **IV.   PLAINTIFF'S CLAYTON ACT CLAIM SHOULD BE DISMISSED.**

10      Plaintiff's claim for violation of Section 8 of the Clayton Act should be dismissed because

11  Plaintiff lacks standing to bring this claim and because his claim is time-barred.  *See* Points I-II, *supra*.

12  Plaintiff's Section 8 claim should also be dismissed for two additional reasons:  (i) the FAC fails to

13  sufficiently allege that Ask Jeeves and MySpace were competitors; and (ii) the FAC fails to allege

14  anticompetitive injury flowing from the alleged violation.

15      Section 8 of the Clayton Act provides:  "No person shall, at the same time, serve as a director or

16  officer in any two corporations … that are – (A) engaged in whole or part in commerce; and (B) by virtue

17  of their business and location of operation, competitors, so that the elimination of competition by

18  agreement between them would constitute a violation of any of the antitrust laws." 15 U.S.C. § 19(a).

19  Plaintiff alleges that Yang and Carlick "each served simultaneously as directors of MySpace and

20  Ask.com" and "each had one year ending sometime in May 2005 to resign from one of the two boards"

21  but failed to do so.  FAC ¶ 81.  The FAC alleges that Yang and Carlick took actions "that benefitted

22  Ask.com, while simultaneously disadvantaging MySpace," specifically, that they caused MySpace to

23

24  [15] The FAC does not explain this cloak-and-dagger allegation and offers no facts to support its bizarre
    claim that Ask Jeeves was somehow able to control and direct MySpace's search traffic, apparently
25  without its knowledge.  "Revenue Science" is yet another entity complicit in Plaintiff's wide-ranging
    conspiracy, although it is not named as a defendant and warrants only a passing reference in the FAC.
26  The FAC alleges that, after contracting to be MySpace's search engine (a supposedly lucrative
    arrangement), Revenue Science decided to "secretly" route that traffic to Ask Jeeves, but provides no
27  explanation for Revenue Science's motivation to do this.  Yet again, the FAC completely lacks
    plausibility.
28

refrain from engaging a search engine provider, which "permit[ed] both Ask.com and AOL, through Revenue Science, to divert search engine traffic from MySpace users, which increased traffic and search volume to AskJeeves" while "minimizing MySpace's revenue and value." *Id.* ¶ 82.  Plaintiff seeks damages "from the lost value of MySpace searches." *Id.* ¶ 83.

*First*, the FAC fails to state a Clayton Act claim because it does not adequately allege that Ask Jeeves and MySpace were competitors.  In *TRW, Inc. v. F.T.C.*, 647 F.2d 942, 947 (9th Cir. 1981), the Ninth Circuit explained that the factors to be considered in determining whether companies are "competitors" for the purposes of Section 8 are the "interchangeability of use between the products," "the extent to which the industry and its customers recognize the products as separate and competing," "the extent to which production techniques for the products are similar," and "the extent to which the products can be said to have distinctive customers."  Plaintiff does not allege any facts regarding these factors and tellingly does not even expressly allege that the two companies were direct competitors.  In fact, any such contention would be flatly inconsistent with the FAC itself, which describes MySpace as a "social media website," and Ask Jeeves was as a "question-answering-focused web search engine."  FAC ¶¶ 16, 19.  The entire predicate of Plaintiff's conspiracy theory is that MySpace did not, and apparently could not, provide internet search services itself, as it contracted that functionality out to Yahoo and later Revenue Science.  FAC ¶¶ 22-24 (describing Google and Yahoo as "search engine companies" that seek to obtain "search engine rights to popular websites such as MySpace").  For this reason, Ask Jeeves and MySpace were not competitors in any relevant market, and the Section 8 claim must be dismissed.

*Second*, the FAC does not allege any anticompetitive injury flowing from the alleged violation.  The Clayton Act provides for damages or injunctive relief to remedy violations of Section 8.  15 U.S.C. §§ 15, 26.[16]  In order to obtain such relief, however, a plaintiff must show a threat of "antitrust injury," which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful."  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109, 113 (1986) (quoting *Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  Indeed,

---

[16] Plaintiff does not request injunctive relief on its Clayton Act claim, nor could it, since such relief would be moot given that Carlick and Yang are not alleged to be current directors of Ask Jeeves or MySpace.

Defendant IAC/InterActive Corp's Motion to Dismiss

Section 8 itself only proscribes interlocks in situations where an agreement between the two competing companies involved "would constitute a violation of the antitrust laws." 15 U.S.C. § 19(a). Thus, the purpose of Section 8 is "to nip in the bud incipient antitrust violations by removing the opportunity for such violations through interlocking directorates." *United States v. Crocker Nat'l Corp.*, 422 F. Supp. 686, 703 (N.D. Cal. 1976). In order to state a Section 8 claim, then, Plaintiff must allege and offer proof of anticompetitive effects and injury. *Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1561 (10th Cir. 1984), *mod. on other grounds*, 793 F.2d 1171 (10th Cir. 1986). By contrast, an injury to a party does not suffice, as it is not the "type of injury that antitrust laws were intended to prevent." *Charming Shoppes Inc. v. Crescendo Partners II, L.P.*, 557 F. Supp. 2d 621, 629-30 (E.D. Pa. 2008) (denying request for injunction under Section 8 where movant only alleged injury to itself and failed to demonstrate that it would suffer any antitrust injury).

Here, Plaintiff does not allege any anticompetitive effects caused by the participation of Yang and Carlick on the boards of both MySpace and Ask Jeeves, which is not surprising given that the two companies were not competitors. Instead, Plaintiff asserts that Yang and Carlick acted in the interests of Ask Jeeves and against the interests of MySpace by somehow secretly diverting search traffic away from MySpace and to Ask Jeeves. While such conduct, if true, might give rise to a claim for breach of fiduciary duty, it would not be a predicate for antitrust liability, as the conduct allegedly injured only MySpace, and not any competitor or competition in any relevant market. For these reasons, Plaintiff's Clayton Act claim must be dismissed.

## V.   PLAINTIFF'S UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED.

Plaintiff's claim for violation of of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, must be dismissed for lack of standing and because it is barred by the statute of limitation. *See* Points I-II, *supra*. The FAC also fails to state a UCL claim for two additional reasons: (i) Plaintiff fails to allege conduct that violates the UCL; and (ii) Plaintiff seeks a remedy that is not available under the UCL.

### A.   Plaintiff Fails to Allege Conduct That Violates the UCL.

Plaintiff's UCL claim should be dismissed as duplicative of his antitrust claims. *See, e.g., Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374-75 (Cal. Ct. App. 2001) (dismissing derivative UCL claim

where plaintiffs failed to state a Cartwright Act claim); *In re Late Fee*, 528 F. Supp. 2d at 965 (dismissing UCL claim because "plaintiffs' theories are explicitly premised on the assertion that the fees violate federal law and the Court has determined that no such claim has been stated").[17]   "If the same conduct it alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason … the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.  To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct."  *Chavez*, 93 Cal. App. 4th at 375.

Plaintiff's allegations in support of his UCL claim are insufficient because they simply restate his Sherman Act and Cartwright Act claims and argue that those same acts were "unfair, unlawful, and or unconscionable, both in their own right and because they violated the Sherman Act and the Cartwright Act."  FAC ¶ 88.  Because Plaintiff has failed to state a Sherman Act or Cartwright Act claim for all the reasons stated above, and because the FAC does not allege any separate wrongful conduct, the UCL claim should be dismissed.

### B.    Plaintiff Seeks Remedies That Are Not Available Under the UCL.

Additionally, Plaintiff may not recover under the UCL based on a claim that the value of his shares of Intermix would have been higher absent the alleged misconduct.  Plaintiff alleges that he and the class were injured because Defendants' conduct "devalu[ed] the price of their stock upon the sale of MySpace to News Corp."  FAC ¶ 89.  He seeks "disgorgement of Defendants' unlawful gains" and "restitution … to restore to them the money or property unfairly withheld from them."  *Id.* ¶ 90.  It is well-settled, however, that damages or "nonrestitutionary disgorgement," *i.e.*, "surrender of all profits earned," are not available remedies for violations of the UCL.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45, 1147 (2003).   Remedies under the UCL are typically limited to injunctive and restitutionary relief.  Cal. Bus. & Prof. Code § 17203; *Korea Supply Co.*, 29 Cal. 4th at 1144.  In the context of the UCL, an order of "restitution" is one "compelling a … defendant to return money obtained through an unfair business practice to those persons in interest from whom the property

---

[17] *See also Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (Cal. Ct. App. 2007).

was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Id.* at 1149 (quotation omitted).  In other words, "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.*; *see also High Tech*, 856 F. Supp. 2d at 1124-25 (dismissing UCL claim seeking alleged higher compensation plaintiffs claimed they would have received absent conspiracy because that remedy is not a "vested" interest for which restitution is available).

Accordingly, a plaintiff asserting a UCL claim may not recover for the diminution in the value of his or her shares of a company, as that would constitute "nonrestitutionary disgorgement." *Feitelberg v. Credit Suisse First Boston LLC*, 134 Cal. App. 4th 997, 1013, 1021 (Cal. Ct. App. 2005); *Smit v. Charles Schawb & Co., Inc.*, No. 10-cv-03971-LHK, 2011 WL 846697, at *9 (N.D. Cal. Mar. 8, 2011) (following *Feitelberg* and concluding that plaintiff could not seek diminution in value of shares as a remedy under the UCL).  "Because differential in the value of the stock was not something received by the defendants from the plaintiffs, it could not be awarded to the plaintiffs as restitution under the UCL." *Smit*, 2011 WL 846697, at *9.  Since Plaintiff does not allege that he gave anything at all to Defendants, but merely seeks to recover some hypothetical loss in value of his shares in Intermix, he does not seek any cognizable remedy under the UCL, and his UCL claim must be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the First Amended Complaint with prejudice.

DATED: February 5, 2015                    GREENBERG TRAURIG, LLP


                                  By  /s/ Kurt A. Kappes
                                      KURT A. KAPPES

                                      1201 K Street, Suite 1100
                                      Sacramento, CA  95814-3938
                                      Telephone:  (916) 442-1111
                                      Facsimile:  (916) 448-1709
                                      Email:  kappesk@gtlaw.com

1                                              -and-

2                                  GREENBERG TRAURIG, LLP
                                   James I. Serota (admitted *pro hac vice*)
3                                  Anastasia A. Angelova (admitted *pro hac vice*)
                                   200 Park Avenue
4                                  New York, New York 10166
                                   Telephone:  (212) 801-9200
5                                  Facsimile:  (212) 801-6400
                                   serotaj@gtlaw.com
6                                  angelovaa@gtlaw.com

7                                  *Attorneys for Defendant IAC/InterActive Corp*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant IAC/InterActive Corp's Motion to Dismiss