1   MAYER BROWN LLP
    LEE H. RUBIN (SBN 141331)
2   lrubin@mayerbrown.com
    DONALD M. FALK (SBN 150256)
3   dfalk@mayerbrown.com
    Two Palo Alto Square, Suite 300
4   3000 El Camino Real
    Palo Alto, CA 94306-2112
5   Telephone:    (650) 331-2000
    Facsimile:    (650) 331-2061
6
    *Attorneys for Defendant*
7   *Google Inc.*

8

9                       **UNITED STATES DISTRICT COURT**

10                     **NORTHERN DISTRICT OF CALIFORNIA**

11                            **SAN JOSE DIVISION**

12

13   BRAD GREENSPAN,                          Case No. 5:14-cv-04187-RMW

14          Plaintiff                         **DEFENDANT GOOGLE'S MOTION TO
                                              DISMISS THE FIRST AMENDED
15   v.                                       COMPLAINT**

16   IAC/INTERACTIVE CORP., a Delaware
     corporation;
17                                            Date:   March 20, 2015
     GOOGLE, INC., a Delaware corporation;    Time:   9:00 a.m.
18                                            Place:  Courtroom 6, 4th Floor
     NEWS CORP., a Delaware corporation;      Judge:  Honorable Ronald M. Whyte
19
            Defendants.
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

INTRODUCTION .................................................................................................................. 2

BACKGROUND .................................................................................................................... 3

ARGUMENT .......................................................................................................................... 7

I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE GREENSPAN
        LACKS STANDING ................................................................................................... 7

        A.      Greenspan Lacks Antitrust Standing .............................................................. 7

        B.      Greenspan Lacks Shareholder Standing .......................................................... 8

        C.      Greenspan Lacks Article III Standing Because Any Injury Is Not Fairly
                Traceable to Google's Conduct .................................................................... 10

II.     THE COMPLAINT SHOULD BE DISMISSED UNDER *TWOMBLY* ........................... 12

        A.      Greenspan's Assertion That Google Agreed Not To Bid On The MySpace
                Search Contract Is Not Supported by Sufficient Factual Allegations ................... 13

        B.      The Bid-Rigging Allegations Against Google Are Implausible In Light of
                Basic Economic Principles ......................................................................... 14

III.    GREENSPAN FAILS TO STATE A UCL CLAIM .......................................................... 15

        A.      Greenspan Has Not Adequately Pleaded A UCL Violation ................................. 15

        B.      Greenspan Has Not Adequately Alleged A Right to Disgorgement .................... 15

IV.     THE COMPLAINT IS TIME-BARRED .......................................................................... 16

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519
(1981) ............................................................................................................................7

*American Ad Mgmt., Inc. v. General Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ......................................................................................8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ..........................................................................................12, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................3, 12, 14

*Bennett v. Spear*,
520 U.S. 154 (1997) ..................................................................................................9, 11

*Bhan v. NME Hospitals, Inc.*,
772 F.2d 1467 (9th Cir. 1985) ......................................................................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ......................................................................................................7

*Bubar v. Ampco Foods, Inc.*,
752 F.2d 445 (9th Cir. 1985) ....................................................................................7, 8

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ....................................................................................10

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....................................................................................10

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004) ......................................................................................7

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
858 F.2d 499 (9th Cir.1988) .................................................................................17, 18

*Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) ......................17

*DM Research, Inc. v. Coll. of Am. Pathologists*,
170 F.3d 53 (1st Cir. 1999) ........................................................................................12

*EMI Ltd. v. Bennett*,
738 F.2d 994 (9th Cir. 1984) ..................................................................................9, 10

*Greenspan v. Intermix Media, Inc.*,
2008 WL 4837565 (Cal. Ct. App. 2008) (unpublished) ..............................................4

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ................................17

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258 (1992)...................................................................................................9, 10

*Kendall v. Visa*,
518 F.3d 1034 (9th Cir. 2008) ...................................................................................12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...................................................................................................15

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .....................................................................................................15

*Lexmark Intern. Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014)........................................................................................................9

*In re Napster, Inc. Copyright Litigation*,
354 F.Supp. 2d 1113 (N.D. Cal. 2005) ..............................................................................8

*Program Engineering, Inc. v. Triangle Publications, Inc.*,
634 F.2d 1188 (9th Cir. 1980) ............................................................................................8

*Rutledge v. Boston Woven Hose & Rubber Co.*,
576 F.2d 248 (9th Cir. 1978) ............................................................................................17

*Samsung Electronics Co. v. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) ..........................................................................................16

*Shell Petroleum v. Graves*,
709 F.2d 593 (9th Cir. 1983) ........................................................................................9, 10

*Sherman v. British Leyland Motors, Ltd.*,
601 F.2d 429 (9th Cir. 1979) .........................................................................................8, 9

*Solinger v. A&M Records, Inc.*,
586 F.2d 1304 (9th Cir. 1978) ............................................................................................8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................................................12

*Stein v. United Artists Corp.*,
691 F.2d 885 (9th Cir. 1982) ..............................................................................................8

*Takhar v. Kessler*,
76 F.3d 995 (9th Cir. 1996) ..............................................................................................10

*Vincel v. White Motor Corp.*,
521 F.2d 1113 (2nd Cir.1975)..............................................................................................9

*Vinci v. Waste Mgmt., Inc.*,
80 F.3d 1372 (9th Cir. 1996) ..............................................................................................7

*William O. Gilley Enters. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) .......................................................................................12, 14

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

15 U.S.C. § 1 ...................................................................................................................7

15 U.S.C. § 15(b) ...........................................................................................................16

Cal. Bus. & Prof. Code § 16720 .....................................................................................7

Cal. Bus. & Prof. Code § 16750.1 .................................................................................16

Cal. Bus. & Prof. Code § 17200 ...............................................................................7, 16

Cal. Bus. & Prof. Code § 17203 .............................................................................15, 16

Cal. Bus. & Prof. Code § 17208 ...................................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(1)...................................................................................................9

Fed. R. Civ. P. 12(b)(6)...................................................................................................9

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE** that on March 20, 2015, at 9.00 a.m., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, Courtroom 6, 4th Floor, located at 280 South 1st Street, San Jose, California, the Honorable Ronald M. Whyte presiding, Defendant Google Inc. will, and hereby does, move this Court for an order dismissing the First Amended Complaint without leave to amend pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing and for failure to state a claim upon which relief can be granted.

   This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete files in this action, argument of counsel and such other further matters as this Court may consider.

Dated:  February 9, 2015

MAYER BROWN LLP
LEE H. RUBIN
DONALD M. FALK

By:     */s/ Lee H. Rubin*
        Lee H. Rubin

*Attorneys for Defendant GOOGLE INC.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

Defendant Google Inc. ("Google") moves to dismiss the First Amended Complaint ("Complaint") on the following grounds:

1.     Plaintiff Brad Greenspan lacks standing to pursue claims under the antitrust laws because he does not complain of injuries in the marketplace of the type against which the antitrust laws were intended to protect.

2.     Greenspan lacks standing because he alleges only injuries that result from injuries to a third party, MySpace, Inc. ("MySpace"), in which he held an ownership interest.

3.     Greenspan lacks standing to pursue claims against Google because he has not alleged any injury that is fairly traceable to conduct by Google, as opposed to independent and intervening actions by third parties that are not before the Court.

4.     Greenspan fails to state any claim for which relief can be granted because the Complaint fails to plead material facts and because the conspiracy he alleges is facially implausible.

5.     Greenspan fails to state a claim for unfair competition because he has not stated a claim for an antitrust violation on which an unfair compeitition claim may be based, because the allegations of a stand-alone claim are conclusory, and because he is not entitled to the remedy he seeks.

6.     Greenspan's claims are time-barred by the applicable four-year statutes of limitation for each claim because Greenspan had constructive knowledge of the asserted claims no later than 2009.

**INTRODUCTION**

This is the fifth lawsuit in ten years that Brad Greenspan has brought or joined to challenge a business deal that happened in July 2005. That deal, which had nothing to do with Google, involved the sale of MySpace to News Corp. for $580 million. As a 10% owner (Complaint ¶ 15), Greenspan received $58 million in the deal, but he argues that his shares were worth much more—and he has been trying to vindicate that view in court ever since. Greenspan now wants to bring Google into the fray.  His new argument is premised on a legally flawed and facially implausible antitrust conspiracy theory.  Specifically, Greenspan now alleges that Defendants Google and  IAC/InterActiveCorp ("Ask.com")[1] conspired to drive down Intermix's valuation by delaying Google's bid for the search business of MySpace—then an Intermix subsidiary. The sole basis for the alleged conspiracy is a Google document that Greenspan characterizes as a "Sensitive Company Agreement," *see, e.g.*, Complaint ¶ 26, which sets forth a "courtesy call" protocol that Google had in place for recruitment of senior personnel from certain "partnership[]" companies. *See* Google, *Special Agreement Hiring Policy: Protocol for "Do Not Cold Call" and "Sensitive" Companies* at 2 (Revision 1106.2006) (Google's Request for Judicial Notice (RJN), Ex. A). Greenspan's implausible theory—at the heart of his Complaint—is that this "agreement" somehow induced Google to delay making a bid for MySpace's search business, which in turn allowed News Corp. to purchase Intermix at a substantial discount.

Greenspan claims the alleged conspiracy violated federal and state antitrust and unfair competition laws, harming him—and the class of Intermix shareholders he now seeks to represent. This action should not go forward. Putting aside the many inaccuracies in his allegations, Greenspan lacks standing, he fails to state any legally viable claim, and, in any event, his claims are time-barred.

Greenspan lacks standing to bring his claims against Google for three independent reasons. First, Greenspan lacks antitrust standing because he alleges injuries that are not among

---

[1] We use "Ask.com" to refer to "AskJeeves.com" and related entities now owned by Defendant IAC/Interactive.

those protected by the antitrust laws. Second, the rule against shareholder standing bars Greenspan's claims because MySpace, not Greenspan personally, was the victim of the antitrust conspiracy he tries to allege. Third, Greenspan lacks Article III standing because he has failed to allege any injury to him that is fairly traceable to Google's conduct.

Greenspan also has failed to satisfy the pleading requirements imposed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). First, the Complaint does not provide the basic factual allegations necessary to support the essential elements of conspiracy and second, each claim hinges on a theory that, as pleaded, is implausible in light of basic economic realities. Greenspan has also failed to state a viable claim under the California Unfair Competition Law (UCL) because he has not sufficiently alleged either an underlying antitrust claim or a stand-alone unfair competition claim. Moreover, the nonrestitutionary disgorgement remedy he seeks is not available under the UCL.

Finally, even if Greenspan's claims were legally tenable, they are too late. Each claim is barred by the applicable four-year statute of limitations because he had constructive knowledge of his claims at least five years before he filed this lawsuit.

## BACKGROUND

*The Long-Running Dispute Over the Sale of MySpace*. Greenspan's allegations against Google stem from the July 2005 sale of Intermix, including its privately held subsidiary MySpace, to News Corp. for $580 million. Complaint ¶¶ 16-17, 22. That acquisition was a bad deal for Intermix shareholders, Greenspan contends, because it reflected an unduly low valuation of MySpace. He has been trying to vindicate that view in court since before the transaction was consummated.[2]

A month after the sale was announced, Greenspan filed a complaint alleging that various officers and directors of Intermix violated their fiduciary duties by conspiring with a venture capital fund, VantagePoint. This alleged conspiracy first gave VantagePoint a controlling interest in Intermix (and forced Greenspan out of his role as CEO), and then allowed VantagePoint to

---

[2] The following litigation history reflects a docket search of publicly accessible materials. It may not be comprehensive.

1   sell Intermix to News Corp. for a quick profit—even though the low price was unfair to other

2   shareholders. *See* Complaint ¶¶ 38-40, 44, 49, 52-54, *Greenspan v. Salzman*, No. BC338786

3   (Los Angeles Super. Ct. Aug. 24, 2005) (RJN, Ex. B). An amended complaint followed in

4   February 2006, after the transaction closed, alleging an array of causes of action (including

5   tortious interference with prospective economic advantage, and breach of fiduciary duty). *See*

6   Amended Complaint, *Greenspan v. Salzman*, No. BC338786 (Los Angeles Super. Ct. Feb. 21,

7   2006) (RJN, Ex. C). *See generally Greenspan v. Intermix Media, Inc.*, 2008 WL 4837565 at *6

8   (Cal. Ct. App. 2008) (unpublished) (describing procedural history). That case ultimately was

9   dismissed without leave to amend. *Id.* at *8. The California Court of Appeal affirmed, relying

10   largely on the theory that the shareholders had ratified the transaction. *See id.* at *25.

11        Greenspan subsequently joined a comparable class action filed in federal district court in

12   2006, but he was dismissed from the action in 2010. *See* Minute Order Dismissing Greenspan

13   from Action, *Brown v. Brewer*, No. 2:06-cv-03731-GHK-SH (Oct. 19, 2010, C.D. Cal.) (RJN,

14   Ex. D). Greenspan then unsuccessfully tried to intervene in that action. *See* Motion to Intervene,

15   *Brown v. Brewer*, No. 2:06-cv-03731-GHK-SH (Oct. 25, 2011, C.D. Cal.) (RJN, Ex. E); Minute

16   Order Striking Motion to Intervene, *Brown v. Brewer*, No. 2:06-cv-03731-GHK-SH (Nov. 29,

17   2011, C.D. Cal.) (RJN, Ex. F). The Ninth Circuit dismissed Greenspan's ensuing appeal of the

18   $45 million settlement as untimely. *See* Order, *Greenspan v. Brewer*, No. 12-55739 (9th Cir.

19   May 9, 2012) (RJN, Ex. G).

20        In April 2014, Greenspan filed a complaint in the Delaware Court of Chancery against a

21   broad set of defendants, including News Corp. and Ask.com, but not Google, alleging numerous

22   counts loosely tied together by the theory that the "Defendants launch[ed a] series of schemes

23   and frauds to take control of publicly traded MySpace and its parent corporation eUniverse (later

24   renamed Intermix) and oust founder/CEO Brad Greenspan." *See* Complaint ¶ 34, *Greenspan v.*

25   *News Corp.*, No. 9567 (Del. Ch. April 22, 2014) (RJN, Ex. H). Shortly thereafter, Greenspan

26   also sought to introduce similar theories into ongoing litigation in California federal court against

27   News Corp. *See* Memorandum in Support of Motion For Intervention, *Huthart v. News*

28   *Corporation*, Case No. CV 13-4253 MWF (C.D. Cal. May 2, 2014) (RJN, Ex. I).  The Delaware

- 4 -

1    action remains pending.

2        *Greenspan's Allegations Against the Defendants.* Greenspan seeks to bring a new

3    theory—antitrust—and a new defendant—Google—into the dispute over the value of Intermix

4    and its subsidiary MySpace at the time of the 2005 deal.  Greenspan now claims that a

5    conspiracy involving Google, Ask.com and News Corp. caused the unduly low sale price for

6    Intermix. This conspiracy was aided by various officers and directors of Intermix, although those

7    individuals are not defendants here.[3]

8        The Complaint "challenges a conspiracy to depress the value of Greenspan and Intermix

9    shareholders at the time of its sale to News Corp." Complaint ¶ 2. But the Complaint does not

10   specifically allege that Google or Ask.com ever entered an agreement with News Corp. Instead,

11   it alleges a scheme between Google and Ask.com, *see*, *e.g.*, *id.* ¶¶ 25-28,[4] and claims that News

12   Corp. knew of and benefited from this scheme, *id.* ¶¶ 41-43. Greenspan's claims against Google

13   thus depend entirely on his allegations of a bid-rigging scheme with Ask.com.

14       The Complaint wraps the alleged bid-rigging scheme around an allegedly bilateral

15   "Sensitive Company Agreement" under which Ask.com and Google each purportedly agreed not

16   to make offers to each other's high-level employees without notifying the other company. *Id.* ¶¶

17   26-38. The Complaint painstakingly describes this agreement, but the details of that alleged

18   arrangement have little bearing on the antitrust theory that Greenspan presses here. Greenspan

19   alleges only that this ongoing bilateral agreement was the "motivation" for Google to delay its

20   bid for the MySpace search contract. *Id.* ¶ 40.[5]

21   _____

22   [3] The Complaint identifies Geoff Yang and David Carlick as "Defendants." *See* Complaint ¶¶ 20-21. This appears to be an error, as they are not listed in the caption of the Complaint.

23   [4] The Complaint does, on occasion, refer to "Defendants," but each time it does so, the context
24   makes clear that Google and Ask.com were the parties to the referenced agreements. *See*, *e.g.*, *id.* ¶ 68 (alleging a bid-rigging agreement among "Defendants" but clarifying in final sentence that it was "AskJeeves and Google" that entered this scheme); *id.* ¶¶ 73-74 (same as to Cartwright
25   Act claim).

26   [5] The Google document from which the Complaint quotes extensively (RJN, Ex. A), shows that Google maintained a list of "Sensitive" companies that as of November 2006 included
27   AskJeeves, as well as several other companies described as Google "partnerships," including AOL, Clear Channel, Earthlink, IBM and Lycos and NTL Incorporated.  The "protocol" for
28   these "Sensitive" companies was that as a general rule, a Google senior executive "would place a courtesy call into the Sensitive Company to let them know [Google had] <u>made</u> an offer" to a high

According to the Complaint, Google and Ask.com entered into the bilateral Sensitive Company Agreement no later than March 2005. *Id.* ¶¶ 26-28. Google also agreed, without further consideration, to delay its bid for the MySpace search contract when MySpace declined to renew its contract with Yahoo! in June 2005. *See id.* ¶¶ 24, 25 ("Google did not engage MySpace for these rights because it had secretly come to an agreement with AskJeeves not to make the bid until MySpace was acquired by News Corp."); *id.* ¶ 26 (alleging that Google asked Ask.com to enter the mutual Sensitive Company Agreement "[i]n exchange" for agreeing to rig the bid). Google delayed a bid, according to the Complaint, at the "direction" of Geoff Yang and David Carlick, who were on the boards of both Ask.com and MySpace at that time. *See id.* ¶¶ 20-21, 40. In other words, Google and Ask.com entered into a recruiting agreement in which each company agreed to place a "courtesy call" to the other before hiring each other's employees. At the direction of Yang and Carlick, who had no connection to Google, Google then also agreed, on the basis of that pre-existing recruiting agreement and without additional consideration from Ask.com, to withhold its bid for MySpace's search contract.

Under Greenspan's theory, everyone benefited from this scheme except for MySpace. Ask.com had inflated revenues during the period that MySpace was without a contractually committed search provider (as a result of having search traffic secretly funneled to it), which was shortly before its own acquisition. *Id.* ¶ 41. The subsequent sale of Ask.com made "millions" for Yang and Carlick. *Id.* ¶ 47. *See also id.* ¶ 42 (alleging that Yang and Carlick directed MySpace not to enter a search contract until after the purchase of Ask.com). And Google benefited "because Yang and Carlick did not renew the search provider contract that MySpace had with Yahoo, leaving Google as the only viable remaining competitor." *Id.* ¶ 41. MySpace, on the other hand, lost out on the revenue it would have received from a search contract with Google. *Id.* ¶ 48. Greenspan claims that the mere existence of a contract with Google would have increased the sales price for Intermix more than fiftyfold, to $32 billion from $580 million. *Id.* ¶ 49.

---

level employee of the respective company. That AskJeeves was one of a number of companies on a "Sensitive Company" list as of November 2006 further highlights the implausibility of Greenspan's claim that the "Sensitive Company Agreement" alleged here was the *quid pro quo* for a bid-rigging scheme.

*The Claims.* Greenspan presses three claims against Google.[6] First, the Complaint alleges that the bid-rigging scheme violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Second, it alleges that this scheme violated California's Cartwright Act, Cal. Bus. and Prof. Code § 16720. Third, it alleges that Google engaged in unfair competion in violation of California Business and Professions Code § 17200. Greenspan alleges that each violation injured him and the Intermix shareholders by reducing the price that News Corp. paid for Intermix shares. Complaint ¶¶ 69, 75, 89.

## ARGUMENT

## I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE GREENSPAN LACKS STANDING.

All of Greenspan's claims fail because he lacks standing to pursue them.

### A.     Greenspan Lacks Antitrust Standing.

"A plaintiff must . . . satisfy the nonconstitutional standing requirements of the statute under which he or she seeks to bring suit." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004). "Congress did not intend to provide a private remedy for all injuries that might conceivably be traced to an antitrust violation." *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 448 (9th Cir. 1985). Thus, even if an antitrust plaintiff satisfies other standing requirements, "the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Id.* (quoting *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1981)). In other words, a plaintiff's alleged injury must be "of the type antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

This "requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985). Instead, antitrust standing "is generally limited to customers and competitors." *Vinci v. Waste Mgmt.,*

---

[6] Greenspan asserts a fourth claim against Ask.com.

1   *Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996). Applying this principle, the Ninth Circuit has

2   repeatedly concluded that the antitrust laws ***do not*** confer standing on a shareholder who is

3   harmed by antitrust violations against a corporation in which the plaintiff holds stock. *See id.* at

4   1375 ("A shareholder of a corporation injured by antitrust violations has no standing to sue in his

5   or her own name . . . .") (quoting *Solinger v. A. & M. Records, Inc.*, 718 F.2d 298, 299 (9th Cir.

6   1983)); *Bubar*, 752 F.2d at 450; *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th

7   Cir. 1979) (applying rule to sole shareholder); *Stein v. United Artists Corp.*, 691 F.2d 885, 897

8   (9th Cir. 1982) (applying rule even though plaintiff alleged that the antitrust violations were

9   intended to drive the plaintiff out of the industry); *Program Engineering, Inc. v. Triangle*

10  *Publications, Inc.*, 634 F.2d 1188, 1191 (9th Cir. 1980) (same).

11          Greenspan does not allege that he suffered antitrust injuries as a participant "in the

12  market where competition is being restrained." *American Ad Mgmt., Inc. v. General Tel. Co. of*

13  *Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999). The Complaint makes clear that only ***MySpace*** was a

14  market participant. To the extent there was any antitrust injury, MySpace was the one harmed.

15  Any injuries to Intermix or its shareholders were "merely incidental to the alleged antitrust

16  violation" and do not suffice to confer antitrust standing. *Solinger*, 586 F.2d at 1311-12 & n.8.

17  Greenspan's antitrust claims thus rest exclusively on his status as a shareholder in a parent

18  corporation of a subsidiary that suffered an alleged antitrust injury.[7] Because the antitrust laws

19  do not provide remedies for such remote claims, Greenspan's claims should be dismissed with

20  prejudice. *See In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1125-26 (N.D.

21  Cal. 2005) (same principles govern standing under the Cartwright Act).[8]

22          **B.      Greenspan Lacks Shareholder Standing.**

23          To have standing, "a shareholder must assert more than personal injury resulting from a

24

25

26  ───────────────
    [7] Greenspan also would lack standing, for the same reasons, if he asserted claims as a MySpace
    shareholder.

27  [8] *Napster* suggested that a shareholder who is the "alter-ego" of a corporation may be able to
    assert a valid antitrust claim. *See* 354 F. Supp. 2d at 1121-22. Those considerations are not

28  present here.

wrong to a corporation."[9] *See EMI Ltd. v. Bennett*, 738 F.2d 994, 997 (9th Cir. 1984) (collecting Ninth Circuit cases and holding that parent company lacked standing to sue for injuries to its subsidiary). *See also Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975) (explaining that where a corporation suffers an injury, and the shareholders suffer solely through a diminution in the value of their stock, the claim belongs to the corporation). These decisions stand on the well-settled principle that a plaintiff who complains of "harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). The rule ensures that "distinct corporate identities" are "observ[ed]," *EMI*, 738 F.2d at 997, and broadly guarantees that only parties with direct interest in the harm at issue and the relief sought pursue litigation.[10] A shareholder does have standing, however, if the shareholder is "injured directly and independently of the corporation." *Shell Petroleum v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983).

Here, Greenspan alleges that Google agreed not to bid for the MySpace search contract until after News Corp. acquired MySpace. *See* Complaint ¶ 25. With search revenue delayed, MySpace suffered economic injury. *Id.* ¶ 48 (explaining that MySpace operated without "any revenue from a search engine contract"). The decrease in search revenue for the one month between the expiration of the Yahoo! contract and the News Corp. acquisition in turn caused the value of Intermix to be lower than it otherwise would have been, which ultimately led to damages to Intermix shareholders. *See, e.g.*, *id.* ¶ 71. In short, the Complaint asserts that Google

---

[9] Dismissal is required regardless of whether this question is resolved pursuant to Rule 12(b)(1) or Rule 12(b)(6) as the governing principles remain the same whether this is considered a "standing" challenge or a question of statutory interpretation. *See Lexmark Intern. Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-87 (2014) (holding that a question of prudential standing under the Lanham Act should properly be resolved as a matter of statutory interpretation).

[10] The general rule against shareholder standing does not apply to derivative actions where the shareholder seeks to stand in the place of the corporation after the corporation has refused to act. *See, e.g.*, *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 440 n.13 (9th Cir. 1979) ("Where there is injury to the corporation, the cause of action should be brought by the corporation, or by the shareholders derivatively if the corporation fails to act; only for separate individual damage does an individual cause of action lie."). Greenspan does not pursue a derivative action here.

1   harmed MySpace, which led to the devaluation of Intermix's interest in MySpace, which led in

2   turn to the devaluation of Greenspan's interest in Intermix (along with the identical interest of all

3   other Intermix shareholders). It is this last alleged loss in value suffered by Greenspan (and the

4   putative class) that forms the basis of the Complaint.

5          Such loss, however, is an "indirect" or "remote" injury that is insufficient to confer

6   standing. *Holmes*, 503 U.S. at 268. Greenspan's theory of harm flows from injuries to a company

7   (MySpace) that was the subsidiary of a company (Intermix) in which Greenspan held stock.

8   Indeed, even Intermix would not have standing to bring suit here. *See EMI*, 738 F.2d at 997.

9   ***MySpace*** is the only entity alleged to have suffered a distinct and independent injury, and it is

10  the only entity that would have standing to pursue these claims.[11] *See Graves*, 709 F.2d at 595.

11  Because Greenspan's claims result from an injury to MySpace and because he does not allege

12  that he suffered harm "independent[] of the corporation" (*id.*), he lacks standing to bring this

13  lawsuit. The Complaint should be dismissed with prejudice.

> ### C.      Greenspan Lacks Article III Standing Because Any Injury Is Not Fairly Traceable to Google's Conduct.

14
15         A plaintiff has the burden of establishing Article III standing. *Takhar v. Kessler*, 76 F.3d

16  995, 1000 (9th Cir. 1996); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22

17  (9th Cir. 2010). When a plaintiff lacks Article III standing, the court lacks subject matter

18  jurisdiction, and the case should be dismissed. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th

19  Cir. 2004). To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff

20  must allege an injury that is "fairly traceable to the challenged action of the defendant, and not

21  the result of the independent action of some third party not before the court." *Bennett v. Spear*,

22  520 U.S. 154, 167 (1997).

23         Notably, Greenspan stops short of specifically alleging that Google conspired with News

24  Corp. to permit News Corp. to purchase Intermix. *See, e.g.*, Complaint ¶ 2 (generally alleging a

25  conspiracy, but not naming parties). Greenspan also does not allege that he worked for either

26

---

27  [11] Greenspan also would lack standing if he brought suit on the basis of his status as a MySpace
    shareholder as he would continue to allege only indirect injuries, not distinct injuries that are
28  independent of his status as a shareholder.

DEFENDANT GOOGLE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-04187-RMW

1   Google or Ask.com and thus cannot allege any injury that is fairy traceable to the alleged

2   Sensitive Company Agreement. *See id.* ¶ 70 (alleging in conclusory fashion that the Sensitive

3   Company Agreement is a *per se* violation of the antitrust laws, but failing to allege that he was

4   harmed by that violation). Greenspan thus must allege an injury to himself that is fairly traceable

5   to Google's alleged agreement with Ask.com to delay its bid for the MySpace search contract.

6   Greenspan has not done so. *See, e.g., id.* ¶ 52. Instead, he alleges only injuries that are the result

7   of two independent actions of officers and directors of MySpace and Intermix who are not before

8   this Court. *See Bennett*, 520 U.S. at 167.

9          First, Greenspan alleges that Google failed to bid for the MySpace search contract until

10   after News Corp. had purchased Intermix. *See* Complaint ¶ 82. Yet Greenspan also alleges that,

11   "[r]ather than cause MySpace to engage in a new exclusive search engine contract with Google,

12   or another search engine provider, Yang and Carlick caused MySpace to refrain from doing so in

13   2005 . . . ." *Id. See also id.* ¶ 42 (alleging that "Yang and Carlick directed MySpace not to renew

14   an exclusive search engine contract with Yahoo *or any other search engine* in order to have

15   Google wait on a bid for a search engine contract until AskJeeves . . . was purchased by IAC")

16   (emphasis added). Simply put, according to Greenspan's own allegations, the independent and

17   intervening actions of Intermix directors Yang and Carlick ensured that no bid would have been

18   accepted ***even if*** Google had made one. The alleged injury to Greenspan and other shareholders

19   would have been the same even if Google had presented a bid to be the search engine for

20   MySpace. Any injury to Greenspan thus is not "fairly traceable" to Google's conduct. *Bennett*,

21   520 U.S. at 167.

22          Second, Greenspan has further alleged that Richard Rosenblatt, then Intermix's CEO,

23   "assur[ed]" the low purchase price for Intermix by "warding-off" offers from companies other

24   than News Corp. Complaint ¶ 44. Again, this allegation makes clear that Google's alleged failure

25   to bid for the MySpace search contract was immaterial to the price paid by News Corp. to

26   purchase Intermix and that any claimed injury was not "fairly traceable" to any conduct by

27   Google. *Bennett*, 520 U.S. at 167.

28

## II.    THE COMPLAINT SHOULD BE DISMISSED UNDER *TWOMBLY*

To survive a motion to dismiss, a complaint must plead sufficient facts that, if accepted as true, state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. The complaint must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. This standard incorporates two important, related principles. First, a complaint cannot rest on conclusory assertions or simply allege legal conclusions masquerading as facts. *See Kendall v. Visa*, 518 F.3d 1042, 1048 (9th Cir. 2008). Rather, a complaint must allege, "not just ultimate facts (such as a conspiracy), but *evidentiary facts* which, if true, will prove" the alleged violation. *Id.* at 1047 (quoting *Twombly*, 550 U.S. at 555) (emphasis added); *see also Iqbal*, 129 S. Ct. at 1950 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation") (internal citation omitted); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept "merely conclusory, unwarranted deductions of fact"). In the Ninth Circuit's formulation, the complaint must "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048.

Second, allegations must state a claim that is "plausible." *Iqbal*, 129 S. Ct. at 1949-50. In other words, it is not enough to allege specific facts unless those facts plausibly add up to a claim for relief. *See id.*; *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (upholding district court's dismissal of antitrust complaint because the alleged conspiracy was "highly implausible") (cited approvingly in *Twombly*, 550 U.S. at 557). In antitrust cases, the requirement of plausibility means that the facts alleged must be "'plausible' in light of basic economic principles." *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009). "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049; *see also Twombly*, 550 U.S. at 554.

The Complaint does not satisfy either principle.

### A.    Greenspan's Assertion That Google Agreed Not To Bid On The MySpace Search Contract Is Not Supported by Sufficient Factual Allegations.

Though the Complaint contains an extended discussion of the alleged Sensitive Company Agreement between Google and Ask.com, and labels it a "*per se* violation[] of the Sherman Act" (Complaint ¶ 70), Greenspan does not allege that he was an employee of either company, or that the agreement caused him to suffer any direct injury. Instead, the gravamen of Greenspan's claim is that Google entered a bid-rigging agreement with Ask.com that injured MySpace. But Greenspan fails to allege this crucial bid-rigging agreement in anything other than a conclusory manner. Greenspan leaves unanswered the "basic questions" that a complaint must answer, "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048.

Tellingly, the linchpin of the entire complaint is wholly conclusory. *See* Complaint ¶ 40 ("Google agreed in advance, at Carlick and Yang's direction, not to make a bid to become the search engine until it was sold to News Corp."). Greenspan fails to allege the additional evidentiary contextual facts that *Kendall* requires. For example, Greenspan does not allege "when" Carlick and Yang provided this "direction" and "when" Google "agreed" to it, and "to whom" at Google Yang and Carlick provided this "direction." *See id.* Other subsidiary questions also go unanswered, including when and how Google knew that News Corp. would acquire MySpace and when and how Yang and Carlick learned about the Sensitive Companies Agreement. The basic contours of the illegal bid-rigging agreement at the core of Greenspan's allegations are a mystery.

The Complaint does recite detailed allegations, but none are pertinent to Greenspan's claims against Google here.  Rather, they appear to be either cribbed from unrelated lawsuits that allege antitrust violations (*see, e.g.*, Complaint ¶ 33) or repeated from Greenspan's prior litigations. The Complaint is bereft of any detail on the allegations that actually matter in this case—a bid-rigging agreement between Ask.com and Google that injured MySpace. No amount of camouflage can conceal the notable absence of basic facts central to Greenspan's claims. The Complaint should be dismissed.

**B.    The Bid-Rigging Allegations Against Google Are Implausible In Light of Basic Economic Principles.**

Even if more details were provided, the Complaint fails to allege a conspiracy that is "'plausible' in light of basic economic principles." *See Gilley*, 588 F.3d at 662. The allegations that Google and Ask.com entered into the Sensitive Company Agreement are a red herring. The bid-rigging claim hinges instead on an alleged *additional* agreement between Google and Ask.com that substantially benefited Ask.com (Complaint ¶¶ 24, 46) without any benefit to Google. The Complaint does not allege any plausible reason why Google would provide a significant benefit to a competitor in the search engine market for no consideration, or why it would hold back from securing a "lucrative" contract with MySpace. *See id.* ¶ 23. It does not allege, for example, that News Corp. promised Google that it would give Google the search contract at a discount later if it refrained from bidding, nor does it even allege that Google had any reason to think that News Corp. would win the bidding for Intermix.[12]

There is a good reason that the Complaint is silent on this critical point: Greenspan's prior pleadings render the alleged bid-rigging conspiracy implausible.  In a prior action, Greenspan pleaded that the first meeting between Intermix CEO Richard Rosenblatt and News Corp. occurred on June 23, 2005, at least three months *after* Google and Ask.com entered into the Sensitive Company Agreement. *See* Opening Brief of Brad Greenspan 6, *Greenspan v. Intermix Media, Inc.*, No. B196434 (Cal. Ct. App. Oct. 19, 2007) (RJN, Ex. J); Complaint ¶ 28 (alleging formation of the Sensitive Company Agreement "no later than March 2005"). The timing does not work for Greenspan's theory in the present case. Because the first meeting between News Corp. and Intermix about a potential acquisition did not occur until months after the Sensitive Company Agreement was in place, it is implausible that the Sensitive Company Agreement provided the "motivation" for Google to refrain from bidding on the MySpace search engine contract to allow News Corp. to purchase MySpace at a discount. See *Id.* ¶ 25 ("Google

---

[12] Any such confidence would have been misplaced. Greenspan alleges that Google "successfully bid on the contract to be the exclusive search engine for MySpace" in "August 2006." Complaint ¶ 50. Thus, despite "desir[ing]" the "lucrative" MySpace search contract, *id.* ¶ 23, and entering into a bid-rigging agreement that rendered it the "only viable remaining competitor" for that contract, *id.* ¶ 41, it took Google an entire year to strike a deal with News Corp.

1   did not engage MySpace for these rights because it had secretly come to an agreement with

2   AskJeeves not to make a bid until MySpace was acquired by NewsCorp.").  Certainly no

3   allegation in the Complaint explains how Google could have known about News Corp's interest

4   in Intermix months before the two firms even met for the first time.

5          The further assertion that Google agreed not to bid for the MySpace search contract "at

6   Carlick and Yang's direction" is equally implausible on its face. *Id.* ¶ 40. There is simply no

7   reason—and certainly none articulated in the Complaint—why a leading search engine would

8   pass on a "lucrative" search contract simply because it had a three-month old reciprocal

9   agreement with Ask.com to provide courtesy calls upon hiring each other's employees and

10  because two members of the boards of directors of Ask.com and MySpace told Google not to

11  bid. These naked allegations make no economic sense.

12  **III.    GREENSPAN FAILS TO STATE A UCL CLAIM.**

13         **A.    Greenspan Has Not Adequately Pleaded A UCL Violation.**

14         Greenspan's UCL claim alleges that Google's actions were "unfair, unlawful, and or

15  unconscionable, both in their own right and because they violated the Sherman Act and the

16  Cartwright Act." Complaint ¶ 88. This claim fails in all respects. First, Greenspan may not base

17  this claim upon violations of the Sherman Act and the Cartwright Act because he lacks standing

18  to assert those claims, and has not pleaded them adequately in any event. Second, Greenspan

19  cannot assert a stand-alone claim because he lacks the "personalized, individualized loss of

20  money or property" required for standing under this statute. *Kwikset Corp. v. Superior Court*, 51

21  Cal. 4th 310, 325 (2011). Greenspan only alleges that he was injured in a manner common to all

22  shareholders and thus is foreclosed from bringing suit. *See id.*

23         **B.    Greenspan Has Not Adequately Alleged A Right to Disgorgement.**

24         Greenspan seeks "disgorgement of Defendants' unlawful gains." Complaint ¶ 90. Section

25  17203 only permits disgorgement "to the extent that these profits represent monies given to the

26  defendant or benefits in which the Greenspan has an ownership interest," that is, restitutionary

27  disgorgement. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003).

28  Greenspan has not alleged that he has given money to Google or that Google holds property in

- 15 -

which he "has an ownership interest." *Id.* Greenspan instead seeks the sweeping remedy of the difference between the price News Corp. paid for Intermix and the price Greenspan believes News Corp. should have paid for Intermix. Section 17203 does not provide that nonrestitutionary remedy.

## IV.   THE COMPLAINT IS TIME-BARRED.

Finally, Greenspan filed this action much too late. He alleges that Google entered a corrupt agreement with Ask.com no later than March 2005, Complaint ¶ 28, and that this agreement bore fruit in August 2006 when Google won the MySpace search contract, *id.* ¶ 50. This action, filed on September 16, 2014, thus is well outside the four-year statute of limitations for each of Greenspan's claims. *See* 15 U.S.C. § 15(b) (establishing four-year statute of limitations for claims under the Sherman Act); Cal. Bus. & Prof. Code § 16750.1 (same, Cartwright Act); *id.* § 17208 (same, Section 17200 claim). Greenspan tries to save his untimely claims by asserting that the antitrust conspiracy was a continuing violation and that Defendants engaged in fraudulent concealment. He fails on both counts.

Greenspan's continuing violation theory fails because he does not allege "that a defendant completed an overt act during the limitations period" that both (1) is "a new and independent act that is not merely a reaffirmation of a previous act," and (2) "inflict[s] new and accumulating injury." *Samsung Electronics Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014). Instead, Greenspan merely alleges that "Defendants' conspiracy was a continuing violation through which Defendants repeatedly invaded Greenspan's and the Intermix's Class's interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein." Complaint ¶ 63. This conclusory allegation fails to identify any "new and accumulating injury," or any "new and independent" act that took place after 2005. *See Samsung*, 747 F.3d at 1202. Nor could Greenspan allege any "new and accumulating injury." Greenspan sold his stock in Intermix in 2005. He could not possibly be injured after that time by "a conspiracy to depress the value of Greenspan and Intermix shareholders at the time of its sale to News Corps."

Complaint ¶ 2.[13]

Nor does Greenspan carry his burden of pleading fraudulent concealment. To do so, he had to allege with particularity "facts showing that [Google] actively misled him, that he had neither actual nor constructive knowledge of the facts constituting his claim for relief despite his diligence in trying to discover the pertinent facts." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978). *See also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (same); *Conmar Corp. v Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988) (stating particularity requirement). But again, Greenspan's allegations are wholly conclusory. He identifies no "affirmative conduct" by any Defendant that concealed the claims in the Complaint, nor any "diligence" on his part "in trying to discover the pertinent facts." *See Rutledge*, 576 F.2d at 249-50. Instead, Greenspan merely alleges the legal conclusion that "[a]s a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled." Complaint ¶ 66.

The Complaint accordingly should be dismissed as untimely. Leave to amend would be futile, moreover, because Greenspan's constructive knowledge of his claims before September 16, 2010 would doom even a well-plead fraudulent concealment theory. The Ninth Circuit has made clear that a complaint must plead facts showing that "[plaintiff] has *neither actual nor constructive knowledge*" of his claims. *Hexcel*, 681 F.3d at 1060 (quoting *Rutledge*, 576 F.2d at 250) (alteration and emphasis in *Hexcel*). In other words, Greenspan was required to allege facts showing that he neither knew nor should have known about his claims more than four years before filing the Complaint. *See Conmar Corp.*, 858 F.2d at 502 (explaining that key question for statute of limitations analysis was whether the plaintiff "should have been alerted to facts that, following duly diligent inquiry, could have advised [him] of [his] claim" and citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975) ("Any fact that should excite his suspicion is the same as actual knowledge of his entire claim.")). He cannot do so. His own

---

[13] The allegation is frivolous to the extent that Greenspan suggests that Intermix shareholders (who were not alleged to work for Ask.com or Google) were injured by the Sensitive Companies Agreement.

1   filings make clear that he knew the following facts before that date: (a) that Yahoo signed a

2   search contract with MySpace in June 2003, *see* Complaint ¶ 22; *see also* RJN, Ex. C ¶ 73

3   (stating that Greenspan received nonpublic company information until November 15, 2003); (b)

4   that there was "clear demand by Search engine companies to add new sources of traffic/users

5   during the summer of 2005"; Decl. of Brad Greenspan 639-40 ¶ 1460(b)(i)(c), *Brown v. Brewer*,

6   No. 2:06-cv-03731-GHK-SH (C.D. Cal. Oct. 25, 2011) (RJN, Ex. K); (c) that Intermix was sold

7   in 2005 at a price that was unfair to shareholders, Ex. C ¶¶ 144-48; (d) that "by recommending

8   the News Corporation transaction [in 2005] and refusing to seek other alternatives, the Board

9   was not acting in the best interests of shareholders," *Id.* ¶ 110; (e) that MySpace conducted a

10  search auction in 2006, that the Yahoo search contract had ended before that time, and that

11  Revenue Science was supporting search at that time, *see, e.g.*, Danny Sullivan, *MySpace Looking*

12  *To Auction Search To Google, Microsoft or Yahoo*, SearchEngineWatch.com (June 13, 2006)

13  (RJN, Ex. L); and (f) that Google's bid of $900 million for the MySpace search contract was

14  accepted in 2006, *see, e.g.*, Saul Hansell, *Google Deal Will Give News Corp. Huge Payoff*, N.Y.

15  Times (Aug. 8, 2006) (RJN, Ex. M).

16          In short, Greenspan believed in 2005 that the News Corp/Intermix transaction was tainted

17  by self-dealing. He also knew that, despite "clear demand by Search engine companies to add

18  new sources of traffic/users during the summer of 2005," a search auction was undertaken and

19  the Google search contract was finalized only in 2006, the year after the Intermix transaction

20  closed. Thus, by 2006, Greenspan was "alerted to facts that" clearly raised the question why the

21  Google deal had not been entered sooner and whether that delay was related to the self-dealing

22  that occurred during the Intermix transaction. *See Conmar*, 858 F.2d at 502. In short, by 2006,

23  Greenspan had constructive knowledge of his claims.

24          At the very minimum, Greenspan certainly had constructive knowledge of his claims in

25  2009. He made the following statement in a memorandum filed in the Central District:

26          In addition, new evidence has become avail[able] *since late 2009* that provides a
            claim to collect for Anti-trust violations of defendants for efforts by defendants to
27          block a Search Auction from being completed by Intermix and MySpace in 2005
            so defendants could allow News Corp to announce the Google partnership and

28

1    receive the $900 million cash payment for its newly owned MySpace division to
     allow Google to be its exclusive search partner.

2   Memorandum of Points and Authorities in Support of Motion to Intervene 18, *Brown v. Brewer*,

3   No. 2:06-cv-03731-GHK-SH (C.D. Cal. Oct. 25, 2011) (RJN, Ex. N) (emphasis added). By his

4   own admission, Greenspan has known "since late 2009" that he had antitrust claims related to the

5   search auction and that those claims could implicate Google. Thus Greenspan at a minimum had

6   constructive knowledge—and most likely actual knowledge—of the claims he now asserts

7   against Google since late 2009, more than four years before he filed this case.[14] His complaint

8   accordingly should be dismissed with prejudice.

9                              **CONCLUSION**

10          Greenspan's latest effort to seek an additional payday for the sale of Intermix—this time

11  from Google, a company which played no role in any aspect of that transaction—is no better

12  than the prior ones.  The Complaint should be dismissed with prejudice.

13

14  Dated:  February 9, 2015                    MAYER BROWN LLP
                                                LEE H. RUBIN
15                                              DONALD M. FALK

16

17                                          By:    */s/ Lee H. Rubin*
                                                   Lee H. Rubin
18
                                            *Attorneys for Defendant GOOGLE INC.*
19

20

21

22

23

24

25

26  ────────────────
    [14] The discovery of the Sensitive Company Agreement in 2012 does not excuse Greenspan's
27  delay. Though he might have learned more about Google's "motivations" in 2012, *see* Complaint
    ¶ 40, he believed at least by 2009 that an antitrust conspiracy had delayed Google's entry into a
28  search engine partnership with MySpace.